**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Tara Taylor, | ) |
|                 Plaintiff, | ) Case No.: 6:17-cv-01875-MGL-KFM |
| v. | ) Amended Complaint |
| Fluor Corporation and Fluor Gov't Group International, Inc., | ) Jury Trial Demanded |
|                 Defendants. | ) |

Plaintiff, through her attorney, would respectfully show unto this Court as follows:

1. Plaintiff is currently a resident of Florida.

2. At all relevant times, Plaintiff has been employed by Defendant Fluor Corporation and its affiliates/subsidiaries (collectively "Fluor"). With regard to the acts of discrimination and retaliation occurring in Afghanistan, Plaintiff was employed through Fluor Corporation's its entity, Fluor Government Group International, Inc., which is headquartered in Greenville, South Carolina.

3. Defendants are in integrated employer that are commonly managed and that transfer assets and employees, including Plaintiff, between various affiliates, that are commonly financed, and that provide common benefits.

4. Beginning in or around early, 2010, Plaintiff was assigned to a Fluor contract situated at the Bagram air base in Afghanistan.

5. Plaintiff held the position of government contract specialist and performed the duties ascribed to that position. Later, Fluor changed Plaintiff's title, but did not change her duties.

1

6. As an employee assigned to work in Afghanistan, Plaintiff received substantially-higher compensation and benefits than what she would earn if assigned to a position within the continental United States.

7. While assigned to Afghanistan, Plaintiff became witness to facts and circumstances relative to another employee's race discrimination and retaliation complaints, as well as other matters that violate Defendants' policies.

8. Plaintiff participated in Defendants' internal investigation and opposed unlawful conduct she observed during her employment.

9. On or about May 28, 2014, Fluor sent a representative from Greenville to investigate the coworker's complaints.

10. The discrimination and retaliation complaints involved conduct by Plaintiff's director, Ron Riley, and others.

11. Prior to participating in the investigation, Riley praised Plaintiff for her work and assured her that he wanted her to remain in her assignment.

12. In early June, 2014, Riley inquired about Plaintiff's plans to remain on the project, which is part of the planning conducted in case the contract is terminated. Plaintiff indicated her desire to remain in Afghanistan, and Riley replied that he was pleased she would remain.

13. In fact, Riley moved Plaintiff upstairs and told her that she had additional duties, which included working on any "close out" of the Bagram contract for Fluor – an assignment that would only be given to someone whom Fluor planned to retain.

14. On or about May 29, 2014, Plaintiff provided information to the corporate representative about the treatment of the coworker, as well as other issues involving corporate compliance and the management compliance with corporate policy.

15. Very shortly after Plaintiff participated in the investigation, Riley went from effusively praising Plaintiff to referring to her and another female who participated in the investigation as the "ungrateful bitches." Riley became extremely hostile to Plaintiff and others who participated in the investigation.

16. Riley also inquired of management as to his ability to "RIF" (i.e. reduction in force or layoff) Plaintiff after he learned of the investigation. This comment was reported to Fluor's internal investigators, but still no action was taken against Riley.

17. Plaintiff filed her own retaliation complaint in June, 2014.

18. Plaintiff complained about retaliation for participating in her coworker's complaints and opposing discrimination. She also raised other issues regarding noncompliance by Riley and others with company policy.

19. The manager, whose concerns about racial discrimination and retaliation Plaintiff had supported, left his assignment. Plaintiff was well qualified to assume the position and had performed the duties in the past. Instead of placing her into the position, however, Riley transferred in another manager, who did not seek the position and had stated that he did not want the transfer. This only increased the headcount at BAF. Riley refused to put Plaintiff in the position because of her protected activity.

20. In or about July, Riley took away Plaintiff's close out duties.

21. Riley told Plaintiff's immediate supervisor that Plaintiff and her female coworker, who also has complained of discrimination, would have no access to Riley and would deal only with the supervisor.

22. Riley began a number of other moves calculated to terminate Plaintiff's employment. Plaintiff was designated as a "GCS" or "government contract specialist" on Fluor's organization chart. Under Fluor's policies, if a reduction in force is necessary, the employee with the least seniority in the country is laid off first. Also, in accordance with directives from the Department of Defense, when a location or facility is closed, personnel from that facility or location are to be reduced unless specific written justification is provided to the military. Another male GCS, LK, was at a facility that was closed. LK had more country seniority than Plaintiff. Plaintiff, however, was not the least senior in Bagram. Another male, PB, was the least senior. PB had been assigned to help with another facility since there was not sufficient work for him in Bagram. Rather than release LK whose facility closed or PB, who was least senior, Riley transferred PB to another facility and transferred LK to Bagram (where he wasn't needed). That combination of convoluted moves that made Plaintiff the least senior at Bagram.

23. Riley, without the knowledge of Plaintiff's direct supervisor, then directed that Plaintiff be let go.

24. Riley's move, along with the resignation of the only other female in the office (who also filed a Charge of Discrimination and was the other "ungrateful bitch" to whom Riley referred) eliminated the remaining females and all three of the people who have filed discrimination claims regarding Riley and others.

25. Plaintiff was informed that Steve Whitcomb also was involved in the decision to terminate Plaintiff's assignment. Whitcomb was also an individual about whom complaints had been made and about whom Plaintiff had provided adverse information.

26. Fluor maintains policies, in mandatory language, providing unequivocal assurances that there will be no retaliation for work-related employee complaints or for participating in Fluor's internal processes. This includes complaints that are not related to purported violations of equal employment opportunity ("EEO") compliance policies.

27. For example, HR Policy 705 provides: "Fluor expects employees to report any suspected noncompliance with the law the Fluor Code of Business Conduct and Ethics (HR-700), or related Fluor policies or procedures, including HR-701. Fluor will take appropriate action to investigate, and where appropriate, remediate. . . ." HR Policy 705 § I. This policy makes clear that it "is intended to cover concerns regarding compliance and ethical business practices and conduct, including but not limited to the following areas . . . [h]arassment, discrimination and other employment issues" and "[f]air labor practices." *Id.* § II. Fluor mandates that employees, "who know, or have reason to suspect, incidents of compliance or ethical violations or misconduct or are directed to do something that would constitute a compliance or ethical violation, are urged to immediately discuss with the person involved or report the circumstances to their supervisor, local Human Resources manager or an investigating department." *Id.* § III(A). The policy also encourages the reporting of concerns through the Employee Hotline. *Id.*

28. Fluor's policies further state clearly that "Fluor prohibits retaliation of any kind against any individual who reports suspected misconduct in good faith. Reports that are made ill good faith do not require proof of misconduct - only that there is a reasonable basis for making the claim." *Id.* III(C).

29. Further, Fluor has orally reinforced, as a matter of binding policy, that it will not tolerate retaliation on the basis of employees voicing concerns in good faith about work related issues and concerns.

30. Plaintiff's concerns, as expressed in the initial investigation as well as in her own retaliation complaint, fall within the ambit of HR Policy 705 and relate to matters other than purported violations of EEO compliance policies.

31. After Plaintiff complained again, Fluor ended her assignment to Afghanistan.

32. Prior to commencing this action, Plaintiff filed a Charge of Discrimination. The EEOC issued a determination and she commences this action within 90 days of her receipt of a Notice of Right to Sue.

33. Defendants' actions are intentional and in willful disregard of the rights of Plaintiff.

**Count I**
**For a First Cause of Action**
**Retaliation – Section 1981 and Title VII**

34. Plaintiff incorporates the foregoing allegations as if set forth here in full.

35. Plaintiff has been retaliated against because of her opposition to Defendants' practices, which violate Title VII, and because of her participation in Defendants' internal EEO processes.

36. Defendants engaged in conduct materially adverse to a reasonable employee including, but not limited to, reducing Plaintiff's compensation and duties, isolating her, seeking to terminate her assignment, refusing to promote her, and terminating her assignment.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claim of retaliation in violation of 42 U.S.C. §1981 ("Section 1981") and 2000e et seq. ("Title VII") and that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendants complained of herein are in violations of the laws of the United States, injunctive relief, an award of lost wages, compensatory and punitive damages, attorney fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

**Count II**
**For a Second Cause of Action**
**Breach of Contract**

37. Plaintiff incorporates the foregoing allegations as if set forth here in full.

38. Defendants' written and oral promises provided, in mandatory terms, express assurances of confidentiality and non retaliation for providing information and participating in Defendants' investigation processes.

39. Defendants' oral and written assurances constitute contractual obligations that altered the presumed at-will nature of the employment relationship.

40. Defendants breached the contractual obligations by terminating Plaintiff's employment, which breached the express and implied terms of the employment agreement between the parties including, but not limited to, the implied covenant of good faith and fair dealing.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claim of the breach of contract and that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendants complained of herein are in violations of the laws of South Carolina, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the wrongful termination complained of herein, reinstatement or front pay in lieu thereof, compensatory damages, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

**Count III**
**For a Second Cause of Action**
**Breach of Contract Accompanied by Fraudulent Act**

41. Plaintiff incorporates the foregoing allegations as if set forth here in full. Defendants have breached the Agreement as set forth above.

42. Defendants have breached the employment agreement of the parties with fraudulent intent relating to the breach.

43. Defendants have committed one or more fraudulent acts accompanying its breach of contract, as evidenced by its dishonesty in fact and unfair dealing such as misrepresenting the reason for the termination of Plaintiff's assignment.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claim for breach of contract accompanied by fraudulent act and entry of judgment to include all amounts owed under the Agreement, specific performance, other actual damages, consequential damages, punitive damages, and all other relief to which Plaintiff can show he is entitled including, but not limited to, costs prejudgment and post-judgment interest.

## Count IV
## For a Fourth Cause of Action
## Promissory Estoppel
## (In the alternative to Counts II and III)

44. Plaintiff incorporates by reference the foregoing averments as if set forth here in full.

45. Defendants made a promise that Plaintiff would not be terminated if she made and participated in Defendants' internal complaint procedures.

46. Plaintiff relied to her detriment on Defendants' promise.

47. Plaintiff has been damaged as a result of her reliance on the promise.

WHEREFORE, Plaintiff requests a trial by jury with respect to her claim of promissory estoppel and entry of judgment to include all relief to which she can show an entitlement, including reliance damages, costs, prejudgment as well as postjudgment interest.

Respectfully submitted this 25th day of June, 2018.

s/ Brian P. Murphy<br>
Brian P. Murphy, Bar No. 6770<br>
Attorney for

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400
Fax:   (864) 240-9292