IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

CASE NO.   6:17-cv-01875-MGL-KFM

Tara Taylor,

    Plaintiff,

vs.

Fluor Corporation, and Fluor
Government Group International, Inc.,

    Defendants.

---

DEPOSITION HENRI FUENTES

---

| | |
|---|---|
| DATE TAKEN: | September 21, 2018 |
| TIME BEGAN: | 10:00 a.m. |
| TIME ENDED: | 10:29 a.m. |
| LOCATION: | Jackson Lewis, PC<br>15 South Main Street<br>Suite 700<br>Greenville, South Carolina   29601 |
| REPORTED BY: | Traci L. Barr, RPR<br>Registered Professional Reporter |

---

EXPEDITE COURT REPORTING, LLC
Traci L. Barr & Associates
Post Office Box 25882
Greenville, South Carolina   29616
(864) 509-0914
ExpediteReporting@gmail.com

```
 1    APPEARANCES:

 2

 3    BRIAN P. MURPHY, ESQUIRE
      Stephenson & Murphy, LLC
 4    207 Whitsett Street
      Greenville, South Carolina   29601
 5    Brian@stephensonmurphy.com
      (864) 370-9400
 6
         .........On behalf of the Plaintiff
 7

 8    T. CHASE SAMPLES, ESQUIRE
      Jackson Lewis, LLP
 9    15 South Main Street
      Suite 700
10    Greenville, SC   29601
      ChaseSamples@jacksonlewis.com
11    (864) 232-7000

12       .........On behalf of the Defendants

13
      ALSO ATTENDING:   (None.)
14

15

16

17

18

19

20

21

22

23

24

25
```

1     -- don't guess at an answer.  If you remember
2     something, you remember it.  If you don't, you
3     don't.  You can just let us know that.  Okay?
4  A. Okay.
5  Q. Another thing, because we're doing this by video
6     link and by your phone, a lot of phones cut in
7     and cut out when there is noise -- I mean, a
8     signal coming in or out, so it's going to be
9     really important that you and I only speak one at
10    a time.  That's important in a live deposition
11    too, but it's going to be really important here
12    because if I'm talking, I think it probably cuts
13    your mike off, and you may say something that
14    doesn't get picked up.  Okay?  So if you could
15    just pause when I ask a question and then answer
16    it, we'll be fine.
17    Mr. Fuentes, what is you are position with Fluor?
18 A. I'm the project manager at -- on the --
19 Q. We're going to adjust the volume here.  You're
20    doing fine.
21    Could you repeat the last answer, please?
22 A. Yeah.  I'm the project manager on the JAX RBOS --
23    it's R-B-O-S -- 1 contract at Jacksonville,
24    Florida.
25 Q. And what company within Fluor --

1   A.   I'm within Fluor Federal Solutions.
2   **Q.   Okay.  And are you the head of that project?**
3   A.   I am.
4   **Q.   Okay.  And for how long have you known Tara**
5   **Taylor?**
6   A.   She came here in I believe it was early '15.
7        That's when I first met her.
8   **Q.   Okay.  And what positions has she held with you**
9   **since she came to Jacksonville?**
10  A.   Human resources manager.
11  **Q.   And who was the HR manager before Tara?**
12  A.   That was Amanda Cook.  Her -- I'm sorry.  Amanda
13       -- I can't remember her last name.  I have
14       another one -- Amanda Cook here, but it's Amanda
15       anyway.  I have to --
16  **Q.   You have --**
17  A.   I've got it right here.  Amanda Cook.  I was
18       right to begin with.
19  **Q.   Are you looking at the e-mails that Chase sent**
20  **you?**
21  A.   Yes.
22  **Q.   Okay.  So Ms. Cook was there in Jacksonville**
23  **before she went back to corporate or went to**
24  **corporate?**
25  A.   Yes.

1   Q.   **Mr. Fuentes, tell me your understanding of how**
2        **the process works if somebody wants to move from**
3        **one part of Fluor to another, from one project to**
4        **another, how that works and what the role of**
5        **what's been referred to as a release is.**
6   A.   My understanding is that they are technically not
7        supposed to discuss anything with my employee
8        until they request a release or they notify me
9        that they're going to talk to them, and then if
10       they want to pick them up, I have to release them
11       from this project.
12  Q.   **And is it in the manager's discretion whether or**
13       **not to grant that release?**
14  A.   Supposed to be, yes.
15  Q.   **Do you have your June 13, 2017 e-mail to Ms. Cook**
16       **in front of you?**
17  A.   I do.
18  Q.   **Okay.  And can you tell us why you determined**
19       **that you would not release Ms. Taylor from your**
20       **project?**
21  MR. SAMPLES:  Object to the form.
22  THE DEPONENT:  We have a very contentious project that
23       was coming to a close.  I couldn't afford to lose
24       any of my key personnel, and Amanda -- excuse me.
25                    EXAMINATION RESUMED

 1   BY MR. MURPHY:
 2   **Q.    Tara?**
 3   A.    Ms. Taylor is a key person here.  We have a
 4         conscientious group, so it was very key I keep
 5         her here through the end of the contract.
 6   **Q.    And is it disruptive to your operations if, for**
 7   **      example, an employee is assigned to your project,**
 8   **      is becoming involved with the union and the other**
 9   **      people, and then immediately wants to transfer**
10   **      out to another position?**
11   A.    Yes, it is.
12   **Q.    And when is your project scheduled to end?**
13   A.    The current date is December 31st of this year.
14   **Q.    Is there any reason to believe it will be**
15   **      extended beyond that point?**
16   A.    That's a tough question.  We believe it might be.
17         We don't know for sure.
18   **Q.    Who is the customer for that project?**
19   A.    U.S. Navy.
20   **Q.    As you understand it, Mr. Fuentes, at what point**
21   **      in time in the process does the employee request**
22   **      a release?**
23   A.    The employee technically doesn't request a
24         release.  Usually it comes from the business line
25         manager that wants to pick them up.

1   Q.   Have you talked to anybody within Fluor -- well,
2        let me back up.  Do you know who Roshella is?
3   A.   I do.
4   Q.   And your project in your part of Fluor works with
5        Roshella James?
6   A.   We do.
7   Q.   Just for the record, she's a lawyer employed by
8        Fluor, correct?
9   A.   Yes.
10  Q.   Okay.  I'm going to ask you some questions.  I
11       don't want you to tell me about any discussions
12       you've had with Roshella James or with Chase
13       Samples, who is the other lawyer here in the room
14       with me, but let me ask this question first.
15       Are there any other lawyers with whom you've
16       discussed Tara Taylor other than possibly
17       Roshella James or Chase Samples?
18  A.   No.
19  Q.   Again, what I want to do is I want to ask you
20       some questions, but don't tell me of any
21       discussions you had with either Roshella or
22       Chase.  Okay?
23  A.   Okay.
24  Q.   And you may know this, but there is what's called
25       the attorney-client privilege, and we're not

1          trying to get into any of that.  Okay?
2          Have you had any discussions with anybody within
3          Fluor about Tara Taylor's lawsuit other than an
4          attorney that may be representing the company?
5     A.   No.
6     Q.   When did you first learn that Tara had an issue
7          with Fluor?
8     A.   When Roshella gave me a call.
9     Q.   Okay.  And again, I don't want you to tell me
10         what was said, but do you remember when Roshella
11         gave you a call?
12    A.   I'm going to say three weeks ago, give or take.
13    Q.   So this isn't something Tara's been talking about
14         or has been an issue where you work?
15    A.   No.
16    Q.   Has Tara done a good job for you as HR manager?
17    A.   Very good job, yes.
18    Q.   I think Chase has given you the e-mails between
19         yourself and Ms. Cook from June of 2017.
20         Do you have those in front of you?
21    A.   I do.
22    Q.   Did you have any communications with Ms. Cook
23         about Ms. Taylor other than what's in these
24         e-mails?
25    A.   No.

1   Q.   Okay.  So the two of you never spoke by phone
2        that you can recall?
3   A.   (Witness shakes head.)
4   Q.   That didn't come across.  The sound didn't come
5        across.
6   A.   Oh.  No.
7   Q.   Okay.  Thank you, sir.
8        So the only communications that you had regarding
9        Tara Taylor with anybody other than a lawyer are
10       the e-mails beginning June 12th, 2017 from Tara
11       to you and Amanda and ending with your e-mail of
12       June 13, 2017, in which you told Amanda you did
13       not release her and there was slim to no chance
14       of releasing her?
15  A.   Yes, that's correct.
16  Q.   And is it still your position, Mr. Fuentes, that
17       you need Tara on your project until it concludes?
18  A.   Yes.
19  Q.   If you would give me just a minute, sir, I may be
20       done.  I just need to check one thing.  Okay?
21  A.   Okay.
22  MR. MURPHY:  I don't have anything further.
23  MR. SAMPLES:  Just a few follow-up questions.
24                       EXAMINATION
25  BY MR. SAMPLES:

1   Q.   Henry, we've talked previously.  Again, I'm Chase
2        Samples.  I represent Fluor in this case brought
3        by Ms. Taylor.
4        We were looking at e-mails from June of 2017.
5        Was June of 2017 the first time that Mrs. Taylor
6        had approached you about applying for a job in
7        Afghanistan?
8   A.   By the e-mail is how I found out about it, yes,
9        and that's the first time.
10  Q.   So prior to June of 2017, she had never requested
11       release from the project; is that correct?
12  A.   Yes, that's correct.
13  Q.   And she didn't actually request release from the
14       project in June of 2017, did she?
15  A.   No, she did not.
16  Q.   She was just putting you on notice that she was
17       applying for a position in Afghanistan; is that
18       correct?
19  A.   Yes.
20  Q.   Has she or has anyone on her behalf requested
21       that she be released from the project any time
22       since June of 2017?
23  A.   No.
24  Q.   Mr. Fuentes, have you ever had a situation where
25       you declined a person's request for release, but

1         that person was still reassigned by Fluor to
2         another project?
3   A.    Yes.  Three times.
4   Q.    Okay.  And of those three times, one of those
5         three employees was actually reassigned to the
6         LOGCAP project in Afghanistan; is that correct?
7   A.    Yes.
8   Q.    Is that a yes?
9   A.    Yes.
10  Q.    So is it fair to say, Mr. Fuentes, that you're
11        not the final word on whether someone is
12        reassigned from your project?
13  A.    I'm supposed to be.  However, business line VPs
14        do override.
15  MR. SAMPLES:  Thank you.  That's all I have.
16                  EXAMINATION RESUMED
17  BY MR. MURPHY:
18  Q.    Just to be clear, Mr. Fuentes, there is no point
19        in time that Tara was on that project that you
20        would have agreed to release her, is there?
21  A.    No.
22  Q.    Who are the three people who you did not want to
23        release that were otherwise sent elsewhere by
24        Fluor?
25  A.    Amanda Cook, Wes Averritt, and Kevin Taylor.  No