UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| Tara Taylor, | ) | Civil Action No. 6:17-1875-BHH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **OPINION AND ORDER** |
| Fluor Corporation and Fluor Government Group International, Inc., | ) | |
| Defendants. | ) | |

This matter is before the Court for review of the Report and Recommendation entered by United States Magistrate Judge Kevin F. McDonald on July 17, 2019 ("Report"). (ECF No. 73.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 for the District of South Carolina, this case was referred to Magistrate Judge McDonald for pretrial handling. In his Report, the Magistrate Judge recommends that Defendants Fluor Corporation and Fluor Government Group International, Inc.'s ("Defendants" or "Fluor") motion for summary judgment (ECF No. 54) be granted in part and denied in part. (*See* ECF No. 73.) The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them here without recitation.[1]

**BACKGROUND**

The Magistrate Judge entered his Report on July 17, 2019, recommending that Defendants' motion for summary judgment (ECF No. 54) be granted as to the breach of

---
[1] As always, the Court says only what is necessary to address the parties' objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; exhaustive recitation of law and fact exists there.

1

contract (Count II) and breach of contract accompanied by a fraudulent act (Count III) causes of action in the amended complaint and be denied in all other respects. (ECF No. 73 at 42.) On July 30, 2019, Plaintiff filed objections challenging those portions of the Report that recommend summary judgment as to Counts II and III. (ECF No. 74.) On July 31, 2019, Defendants filed objections challenging those portions of the Report that recommend summary judgment be denied. (ECF No. 76.) Plaintiff filed a reply to Defendants' objections on August 12, 2019. (ECF No. 78.) Defendants filed a reply to Plaintiff's objections on August 13, 2019. (ECF No. 79.) The matter is ripe for consideration and the Court now makes the following ruling.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

The Court declines to repeat the cogent analysis of the Magistrate Judge with

respect to every aspect of each claim and will confine its analysis to those portions of the Report to which the parties raise specific objections. Moreover, the Court assumes familiarity with the factual background as set forth, in depth, in the Report (*see* ECF No. 73 at 2–18) and specifically adopts the shorthand references to relevant individuals' names and position titles without further explanation.

### A. Retaliation – Title VII and 42 U.S.C. § 1981

The Magistrate Judge found that, viewing the evidence and drawing all inferences in a light most favorable to Plaintiff, there is sufficient evidence to establish genuine issues of material fact regarding whether retaliation for Plaintiff's complaint against Riley and for her participation in the investigation of Johnson's complaints was the but-for cause of Plaintiff's demobilization and of Riley's failure to promote her to the Prime Contracts Manager position. (*See* ECF No. 73 at 19–28.) Accordingly, the Magistrate Judge concluded that Defendants are not entitled to summary judgment on Plaintiff's retaliation claim. (*Id.* at 28.) Moreover, the Magistrate Judge found that Plaintiff has presented evidence that, when viewed in a light most favorable to her, could lead a reasonable factfinder to determine that she engaged in activity protected under § 1981, and that summary judgment should be denied as to the § 1981 retaliation claim. (*Id.* at 28–30.)

Defendants first object to the Magistrate Judge's preliminary determination that Plaintiff could establish a *prima facie* case of retaliation. (*See* ECF No. 76 at 8–11.) Specifically, Defendants argue that Plaintiff cannot get past this initial step of the *McDonnell Douglas* proof scheme because she cannot establish a causal connection between her protected activity and later adverse employment action. (*Id.* at 8.) Defendants urge the Court to reject the Magistrate Judge's recommendation that Plaintiff

3

established a causal connection based on temporal proximity because approximately three months passed between Plaintiff engaging in protected activity and her position being eliminated, and because Riley allegedly did not know about Plaintiff's protected activity at the time he transferred Hooks to the Prime Contracts Manager position at Bagram, thereby passing over Plaintiff. (*Id.* at 9–10.)

The Court agrees with the Magistrate Judge that Plaintiff established the requisite causal connection to set forth a *prima facie* case. It is true that "[w]here a plaintiff rests [her] case on temporal proximity alone, the temporal proximity must be very close." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017)). It is also true that, while the Fourth Circuit has declined to adopt a bright temporal line in this regard, under certain circumstances the Court of Appeals has held that a three- or four-month lapse between the protected activity and the discharge was too long to establish a causal connection by temporal proximity alone. *See Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012); *Pascual v. Lowe's Home Ctrs., Inc.,* 193 F. App'x 229, 233 (4th Cir. 2006). Nevertheless, the Court agrees with the Magistrate Judge's analysis that a very close succession of events in this case demonstrates the requisite connection to give rise to an inference of causation: (1) Plaintiff was interviewed in the investigations of Johnson's complaints in late April and May 2014; (2) Plaintiff filed her own hotline complaint on June 2, 2014; (3) Smith interviewed Riley on July 8, 2014, to discuss the allegations of the hotline complaints by Plaintiff and Klimak; (4) at the end-of-July budget meeting, Riley told Project Controls Manager Howard for the first time that he planned to demobilize Plaintiff and Klimak; (5) sometime prior to August 5, 2014, Riley requested an SRF to eliminate Plaintiff's position, and he returned the signed SRF to Badillo on August 11,

4

2014; (6) the investigation of Plaintiff's complaint concluded on or about August 27, 2014; and (7) on September 4, 2014, Plaintiff was told that she was being demobilized. (*See* ECF No. 73 at 21–22.) Defendants arguments regarding a lack of temporal proximity oversimply the timeline and ignore the fact that Riley began taking necessary steps to demobilize Plaintiff almost immediately after being interviewed as part of the investigation of Plaintiff's complaint regarding his conduct. The fact that Riley did not consummate the demobilization until early September 2014 is immaterial because intervening events between the protected activity and ultimate action can be demonstrative of retaliatory intent. *See Lettieri v. Equant Inc.*, 478 F.3d 640 (4th Cir. 2007) (holding that evidence of recurring retaliatory animus in intervening period between discrimination complaint and termination satisfied causation element of *prima facie* case of retaliation). Moreover, Defendants' bald assertion that Riley did not know about Plaintiff's protected activity at the time he transferred Hooks into the Prime Contracts Manager position, is itself a disputed issue of fact preventing the entry of summary judgment on the failure to promote theory. (*See* Pl.'s Reply to Defs.' Objections, ECF No. 78 at 5 n.4 (detailing Plaintiff's evidentiary basis for the assertion that Riley's decision to transfer Hooks directly followed his knowledge of Plaintiff's complaint).) Accordingly, the objection is overruled.

Defendants next object to the Magistrate Judge's finding that Plaintiff presented sufficient evidence to establish pretext. (*See* ECF No. 76 at 11–14.) Defendants argue that the Magistrate Judge failed to consider evidence they offered to substantiate Fluor's legitimate, non-retaliatory reason for eliminating Plaintiff's position and erroneously stated that such evidence did not exist. (*Id.* at 11–12.) They further assert that the Magistrate Judge, when discussing pretext, failed to fully consider all of Fluor's stated reasons why

5

Plaintiff's specific position was selected for elimination, including the budget constraints Fluor was facing at the time and the fact that Plaintiff was the highest paid person performing the work of a Prime Contracts Specialist. (*Id.* at 12)

These arguments miss the mark. The question under consideration with regard to pretext is whether Plaintiff can make an adequate showing that retaliation was a but-for cause of her demobilization and her being passed for promotion. "The Supreme Court has recently reiterated that a cause need not work in isolation to be a but-for cause." *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016) (emphasis in original) (citing *Burrage v. United States*, 571 U.S. 204, 211 (2014) ("Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.")). Thus, even assuming budget constraints and Plaintiff's rate of pay were part of the calculus that led to her position being selected for elimination, Plaintiff need only produce evidence sufficient to show that her position would have been retained without the incremental effect of the alleged retaliation. After reviewing the evidence relevant to the pretext inquiry *in depth* (*see* ECF No. 73 at 24–28), the Magistrate Judge concluded that "there is sufficient evidence that while the [D]efendants' stated reasons may have played a part in [Plaintiff's] demobilization, without the 'incremental effect' of retaliation for her complaint and her participation in the investigations of Johnson's complaints, she would not have been demobilized." (*Id.* at 28.) The Court agrees and finds no error in the Magistrate Judge's reasoning and analysis. There is evidence to show that: (1) Riley promoted Plaintiff to the position of Prime Contracts Supervisor a short time prior to her engaging in protected activity; (2)

Riley intended to keep Plaintiff at Bagram, as reflected in his projected makeup of the department during the closing of FOBs and reduction of staffing in Afghanistan; (3) an organizational chart dated May 28, 2014, the day before Plaintiff was interviewed regarding Johnson's complaint, showed Plaintiff as reporting directly to Riley as "Country GCS," a position of seniority within the Prime Contracts department, whereas a chart dated July 14, 2014, shortly after Plaintiff lodged her own complaint, shows Plaintiff as a "GCS" and the lowest Prime Contracts employee on the organizational chart; (4) prior to Plaintiff's own complaint, Riley made various statements demonstrating his intent to retain Plaintiff in a "closeout position," which would keep her onsite in Afghanistan until the end of the project; (5) Riley's demeanor and conduct toward Plaintiff, as well as his plans for the maintenance of her position, changed immediately following her complaint and her participation in the investigation of Johnson's complaints; (6) upon hearing that Riley wanted to demobilize Plaintiff, and possibly Klimak, because he was "sick of them and their bullshit" and "want[ed] to get rid of them," James Badillo, head of Strength Management (a Human Resources-related department), informed Riley that he could not rely on personal frustration alone, but needed to possess a legitimate business justification and go through the necessary organizational steps in order to achieve the reduction(s) in force. (*See* ECF No. 73 at 24–27.) The Court finds that, under the summary judgment standard, Plaintiff has met her burden to demonstrate that Fluor's proffered justifications for her demobilization and failure to promote are pretextual. Accordingly, the objection is overruled.

Defendants further object to the Magistrate Judge's recommendation that Plaintiff's § 1981 claim proceed beyond summary judgment because the case is

adequately connected to allegations of race discrimination by Johnson. (*See* ECF No. 76 at 13–14.) Defendants argue that "[t]his is not a race case" and point out that Plaintiff affirmed in her deposition testimony that she did not personally experience race discrimination. (*Id.* at 13.) They further assert that the connection between Plaintiff's instant allegations and Johnson's allegations of race discrimination is too attenuated to sustain Plaintiff's retaliation claim under § 1981. (*See id.* at 13–14.) The Court disagrees and finds no error in the Magistrate Judge's analysis on this point. (*See* ECF No. 73 at 29–30.) Plaintiff has presented enough evidence of a connection between her participation as a witness to Johnson's race discrimination and retaliation complaints on the one hand, and the alleged retaliation that she herself suffered on the other, to permit a reasonable factfinder to determine that she engaged in protected activity under § 1981. Accordingly, the objection is overruled.

Defendants next object to the Magistrate Judge's supposed failure to adequately address the continuing viability of Plaintiff's claim for punitive damages, because the Magistrate Judge did not discuss certain cases that Defendants raised in their summary judgment briefing. (ECF No. 76 at 14–17.) However, the Magistrate Judge specifically discussed the punitive damages issue, recommended that this Court deny the motion for summary judgment on the punitive damages claim, and found that the Court would be better equipped to make a punitive damages determination either just before or during trial. (*See* ECF No. 73 at 36–37 (citing *Ellis v. Harrelson Nissan of S.C., LLC*, C.A. No. 0:15-CV-3322-MBS, 2017 WL 4349212, at *10-11 (D.S.C. Sept. 29, 2017).) The Court finds no error in the Magistrate Judge's analysis or recommendation and the objection is overruled.

8

Defendants further object to the Magistrate Judge's conclusions regarding their failure to mitigate damages defense and Plaintiff's claim for hazard and hardship pay as a component of back pay, namely, that Defendants are not entitled to summary judgment on either of these related issues. (*See* ECF No. 76 at 17–20.) Defendants assert that for at least an eighteen-month period between September 2014 and March 2016, Plaintiff failed to mitigate her backpay damages by not applying to any job, including any job that would have paid her hazard and hardship pay comparable to the eighty percent "uplift" she had been earning in Afghanistan. (*See id.* at 17–18.) Defendants arguments in this regard are incompatible with their repeated assertion that Fluor's budgetary constraints and Plaintiff's unique circumstance of being paid at a manager's rate, though she had no subordinate employees, mandated the elimination of her position specifically. At the very least, there is a genuine question of material fact as to whether any "comparable" work was available under Fluor's LOGCAP contract in Afghanistan during the relevant time period in light of the general reduction in force. The Court finds that the Magistrate Judge committed no error in his reasoning or conclusions regarding the failure to mitigate damages and hazard and hardship pay issues, and the objection is overruled.

Finally, Defendants object to the Report generally by arguing that Fluor Corporation is not a proper party to this employment discrimination case. (ECF No. 76 at 20–21.) Defendants argue that Fluor Corporation did not act as an employer to Plaintiff or control or direct her employment in any way, and that Fluor Corporation is not integrated with Fluor Government Group International, Inc.—the source of Plaintiff's W-2 statements—under the integrated employer test. (*Id.*) The Magistrate Judge correctly found that Defendants' motion for summary judgment failed to address either the

integrated employer test or the joint employer test, and recommended denying the motion for summary judgment on this basis. (*See* ECF No. 73 at 34–36 (citing *Dunlap v. TM Trucking of the Carolinas, LLC*, 88 F. Supp. 3d 654, 664-65 (D.S.C. 2017)).) Issues raised for the first time in objections to a magistrate judge's recommendation are deemed waived. *Harris v. Astrue*, No. 2:11-CV-01590-DCN, 2012 WL 4478413, at *5 (D.S.C. Sept. 27, 2012) (citing *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir. 1996)). Defendants' invocation of the integrated employer test for the first time in their objections is improper and the objection is overruled. However, even if the Court were to consider the merits of this objection it would prove unavailing. There is sufficient record evidence to create a genuine issue regarding Fluor Corporation's involvement in factual matters material to the case, to wit: (1) the policies at issue are Fluor Corporation's corporate policies; (2) the employee reporting hotline is operated by Fluor Corporation; (3) employees of the Fluor parent entity seamlessly transition between subsidiary entities; and (4) there are interlocking corporate directors shared by Fluor Corporation and Fluor Government Group International, Inc. (*See* ECF No. 78 at 21–22.) Thus, Defendants are not entitled to summary judgment on the issue of dismissing Fluor Corporation as a party defendant in any event.

## B. Breach of Contract (Count II) and Breach of Contract Accompanied by Fraudulent Act (Count III)

With respect to Plaintiff's breach of contract cause of action, the Magistrate Judge found that the non-retaliation provision in Fluor's Human Resources Policy 705 ("HR 705") is a general non-retaliation policy that does not contain the type of mandatory language necessary to alter the presumed at-will nature of Plaintiff's employment relationship with Fluor. (*See* ECF No. 73 at 30–34.) The specific language in question states: "Fluor

prohibits retaliation of any kind against an individual who reports suspected misconduct in good faith. Reports that are made in good faith do not require proof of misconduct— only that there is a reasonable basis for making the claim." (ECF No. 56-75 at 4.) The Magistrate Judge noted that this language is materially similar to a non-retaliation provision that Judge Childs recently held did not create an employment contract, namely: "No disciplinary action or retaliation is taken against any individual who reports a perceived issue, problem, concern or violation to management, Human Resources, Corporate Integrity or the Compliance Hotline 'in good faith.' The 'in good faith' requirement means an employee actually believes or perceives the information reported to be true." (ECF No. 73 at 31 (quoting *Yon v. Reg'l Med. Ctr.*, No. 5:14-cv-2098-JMC, 2016 WL 1178202, *14 (D.S.C. Mar. 28, 2016)).). Addressing the non-retaliation provision in *Yon,* Judge Childs stated:

> [T]he court does not find any language therein that is sufficient to establish a genuine issue of fact that [the plaintiff] had a "contract" of employment by virtue of these policies. For language in these policies to create binding contractual obligations, the provisions cited by [the plaintiff] must contain sufficiently mandatory terms that give rise to a reasonable expectation on their part of continued employment. *Small v. Springs Indus., Inc.*, 357 S.E.2d 452, 455 (S.C. 1987). In this regard, the policies cited by [the plaintiff] do not in any way limit [the employer's] right to terminate [the plaintiff's] employment and, therefore, her at-will status has not been altered by the policies. *Wadford v. Hartford Fire Ins. Co.*, C/A No. 3:87–2872-15, 1988 WL 492127, at *5 (D.S.C. 1988) ("A review of the relevant authorities . . . reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term.").

*Yon*, 2016 WL 1178202 at *14. The Magistrate Judge concluded that neither HR 705, nor other sections of Fluor's policies referenced by Plaintiff, contain language sufficient to

11

establish a genuine issue of fact that Plaintiff had a contract of employment by virtue of the policies; therefore, the Magistrate Judge recommended that summary judgment be granted as to the breach of contract cause of action. (*Id.* at 33–34.)

Plaintiff objects by arguing that "[t]here is nothing permissive" about the language of the non-retaliation provision in HR 705, and by asserting that the existence *vel non* of a binding promise not to terminate an employee who reports suspected misconduct is a matter for the jury. (*See* ECF No. 74 at 2–3.) Plaintiff cites *Bookman v. Shakespeare Co.*, 442 S.E.2d 183 (S.C. Ct. App. 1994) in support of her assertion that Fluor's non-retaliation provision created an employment contract in this case. However, in *Bookman* the South Carolina Court of Appeals actually affirmed the trial court's grant of summary judgment in the employer's favor. *See id.* at 184. Moreover, the *Bookman* court's discussion of the non-retaliation provision at issue in that case was dicta because the plaintiff did not claim violation of the provision and it had no bearing on the court's decision. *See id.* ("[T]he only limitation on Shakespeare's right to terminate Bookman was a prohibition against retaliatory discharge for filing a sexual harassment complaint, and Bookman does not claim a violation of this prohibition."). Finally, the policy language discussed in *Bookman* contained mandatory language that is absent from the HR 705 provision: "employees are *assured* that they *will* be free from any and all reprisal or retaliation." *Id.* at 183 (emphasis added). Accordingly, Plaintiff's reliance on *Bookman* is misplaced. The Court also notes that Judge Childs' conclusion regarding the materially similar non-retaliation provision in *Yon* reflects the prevailing view in this District regarding non-retaliation policies with similar language. (*See* ECF No. 73 at 32–33 (citing *Brailsford v. Fresenius Med. Ctr. CNA Kidney Ctrs. LLC*, C.A. No. 2:15-cv-4012-DCN, 2017 WL 1214337, at *8 (D.S.C. Apr. 3,

12

2017); *Frasier v. Verizon Wireless*, C.A. No. 8:08–cv–356-HMH, 2008 WL 724037, at *2 (D.S.C. Mar.17, 2008); *King v. Marriott Int'l, Inc.*, 520 F. Supp. 2d 748, 756 (D.S.C. 2007); *Cartee v. Wilbur Smith Assocs.*, C.A. No. 3:08-4132-JFA-PJG, 2010 WL 1052091, at *3 (D.S.C. Feb. 3, 2010), *R&R adopted by* 2010 WL 1052092 (D.S.C. Mar. 22, 2010)).) Thus, the Court finds no error in the Magistrate Judge's findings and recommendations regarding Fluor's written non-retaliation policy, and Plaintiff's objection is overruled.

Plaintiff further objects by arguing that the Magistrate Judge erroneously stated that Plaintiff failed to produce evidence of oral statements made by Fluor in representing its non-retaliation policy that would create a jury issue as to the existence of a contract. (ECF No. 74 at 4.) Plaintiff quotes sections from her declaration in order to show that she did produce evidence of Fluor's alleged oral promises in this regard. (*See id.* (quoting ECF No. 56-15 ¶¶ 11–12).) The Court has reviewed the oral representations submitted by Plaintiff and finds that, even when viewed in the light most favorable to Plaintiff, they are insufficient to create a genuine issue of material fact regarding the existence of an employment contract. Accordingly, the objection is overruled.

With respect to Plaintiff's breach of contract accompanied by fraudulent act cause of action, the Magistrate Judge found that Defendants are entitled to summary judgment because the existence of a contract is a necessary predicate to this claim. (*See* ECF No. 73 at 34 (citing *Westmoreland v. AB Bev. Co., Inc.*, C.A. No. 1:05-3475-MBS, 2007 WL 2749450, at *14 (D.S.C. Sept. 20, 2007)).) Plaintiff makes only a conclusory objection to this finding (*see* ECF No. 74 at 4), and the objection is hereby overruled.

## **CONCLUSION**

After careful consideration of the relevant materials and law, and for the reasons

set forth above, the Court ADOPTS the Report (ECF No. 73) of the Magistrate Judge and incorporates it herein. Accordingly, Plaintiff's (ECF No. 74) and Defendants' (ECF No. 76) objections are both OVERRULED, and Defendants motion for summary judgment (ECF No. 54) is GRANTED as to the breach of contract (Count II) and breach of contract accompanied by fraudulent act (Count III) causes of action, and DENIED in all other respects.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 27, 2019
Charleston, South Carolina