# EXHIBIT D

## *James Joyner Expert Report*

## EXPERT REPORT – <u>UPDATE #2</u>

of
**JAMES F. JOYNER III**

**Dated 15 December 2019**

in the matter of

**TARA TAYLOR**

**- Plaintiff -**

**and**

**FLUOR CORPORATION**
**and FLUOR GOVERNMENT GROUP INTERNATIONAL, INC.**

**- Defendants -**

## CASE NO. 6:17-cv-01875-BHH-KFM

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

# CONTENTS

1. THE ASSIGNMENT ....................................................................................................................... 1
   1.1. Subject legal action. .............................................................................................................1
   1.2. Engagement date and terms. ................................................................................................1
   1.3. Topics of expert testimony. .................................................................................................1
   1.4. Expert report. .......................................................................................................................1
   1.5. Education and professional credentials. ..............................................................................1
   1.6. Professional experience. ......................................................................................................1
   1.7. Independence and conflicts of interest. ...............................................................................1
   1.8. Sources. ................................................................................................................................2
   1.9. Compliance with Fed. R. Evid. 702 and Fed R. Civ. P. 26(a)(2). ......................................2
   1.10. Revisions. .............................................................................................................................2

2. SELECTED DEFINITIONS .......................................................................................................... 2
   2.1. Subject Legal Action. ..........................................................................................................2
   2.2. Presiding Judge. ...................................................................................................................2
   2.3. Magistrate Judge. .................................................................................................................2
   2.4. Plaintiff. ...............................................................................................................................2
   2.5. Attorney for Plaintiff. ..........................................................................................................2
   2.6. Defendants. ..........................................................................................................................2
   2.7. Attorney for Defendants. .....................................................................................................2
   2.8. DoD. .....................................................................................................................................3
   2.9. LOGCAP. .............................................................................................................................3
   2.10. LOGCAP Contract Terms. ..................................................................................................3

3. INTRODUCTION AND BACKGROUND .................................................................................... 3
   3.1. Fluor's contract in Afghanistan. ..........................................................................................3
   3.2. Staffing and premature departure. .......................................................................................3
   3.3. Troop levels. .........................................................................................................................4

4. PLAINTIFF'S EMPLOYMENT BY DEFENDANT .................................................................... 6
   4.1. Tara D. Taylor's employment with Defendant Fluor. ..........................................................6
   4.2. Tara D. Taylor's mobilization to Afghanistan. ....................................................................7

5. CALCULATIONS AND CONCLUSION OF PUTATIVE DAMAGES ....................................... 8
   5.1. General assumptions. ...........................................................................................................8
   5.2. Probability-weighted calculations of putative damages. .....................................................8
   5.3. Discount rates for putative damages based on earnings. ......................................................9
   5.4. Conclusion of putative damages. .........................................................................................9

6. REBUTTAL OF PLAINTIFF EXPERT'S REPORT .................................................................... 9
   6.1. Alford's report. ....................................................................................................................9
   6.2. Alford's approach to damages. ...........................................................................................10
   6.3. Meals and incidentals and lodging provided in Afghanistan. ............................................10
   6.4. Foreign earned income exclusion (from taxable income) for expatriate status in Afghanistan. ............12
   6.5. Re-calculated earnings without erroneous 401(k) match. .................................................14
   6.6. Re-calculated earnings adjusted for failure to mitigate. ...................................................15
   6.7. Re-calculated earnings without salary uplift earnings. ......................................................15
   6.8. Income Tax Effect of One-Time Award ............................................................................16
   6.9. Summary of errors in Alford's calculation of damages. ....................................................17
   6.10. Failure to account for uncertainty of mobilization through June 2021. .............................17

EXHIBIT 1 – GENERAL ASSUMPTIONS .................................................................................... 20

EXHIBIT 1 – GENERAL ASSUMPTIONS (CONTINUED) ........................................................ 21

EXHIBIT 2 – CALCULATED MOBILIZATION EARNINGS COMPARED TO DEMOBILIZATION EARNINGS ...................................... 22

EXHIBIT 2 – CALCULATED MOBILIZATION EARNINGS COMPARED TO DEMOBILIZATION EARNINGS (CONTINUED) ............. 23

EXHIBIT 2 – CALCULATED MOBILIZATION EARNINGS COMPARED TO DEMOBILIZATION EARNINGS (CONTINUED) ............. 24

EXHIBIT 3 – ESTIMATE OF EARNINGS BEFORE TAYLOR'S ATTEMPT TO MITIGATE ................................................. 25

EXHIBIT 4 – M&A VS TOTAL PERSONNEL ............................................................................................... 26

EXHIBIT 5 – SUMMARY OF FORM W-2 FOR TARA D. TAYLOR ...................................................................... 27

EXHIBIT 6 – SUMMARY CALCULATION OF TARA D. TAYLOR'S TIME OFF DURING MOBILIZATION ........................... 28

EXHIBIT 7 – SUMMARY ALFORD'S DAMAGES CALCULATIONS ....................................................................... 29

EXHIBIT 7 – SUMMARY ALFORD'S DAMAGES CALCULATIONS (CONTINUED) ..................................................... 30

EXHIBIT 7 – SUMMARY ALFORD'S DAMAGES CALCULATIONS (CONTINUED) ..................................................... 31

EXHIBIT 8 – PROBABILITY TABLES ....................................................................................................... 32

EXHIBIT 8 – PROBABILITY TABLES (CONTINUED) .................................................................................... 33

EXHIBIT 8 – PROBABILITY TABLES (CONTINUED) .................................................................................... 34

EXHIBIT 9 – JOB SEARCH CHART FOR SUPPLEMENTAL DISCOVERY (TARA D. TAYLOR) ..................................... 35

APPENDIX A -1 – EXPERT QUALIFICATIONS OF JAMES FORREST JOYNER III ................................................... 39

APPENDIX A-2 – EXPERT CREDENTIALS .................................................................................................. 40

APPENDIX B – SELECTED DATA REVIEWED FOR THIS REPORT ..................................................................... 41

# 1. THE ASSIGNMENT

1.1. <u>Subject legal action.</u>

My report is written for TARA TAYLOR, Plaintiff v. Fluor CORPORATION and Fluor GOV'T GROUP INTERNATIONAL, INC., Defendants, CASE NO. 6:17-cv-01875-BHH-KFM.

1.2. <u>Engagement date and terms.</u>

I was engaged by the Defendant on 09 February 2018 to testify for the Defendants. My fee is based on my time at the hourly rate of $295, and other professional time at the hourly of $195.

1.3. <u>Topics of expert testimony.</u>

Damages calculations, based on my professional training as a certified public accountant (SC, NC, GA), certified valuation analyst, and certified risk manager; testimony pertaining to accounting, taxation, and payroll practices of business operations; and, other matters about which I may be asked to testify during this engagement.

1.4. <u>Expert report.</u>

This updated report supersedes my original report, dated 16 November 2018, and the supplement, dated 07 December 2018, and the previous update, dated 27 November 2019.

1.5. <u>Education and professional credentials.</u>

An outline of my education and professional licenses and credentials is attached to this report.

1.6. <u>Professional experience.</u>

1.6.1. My professional experience includes accounting and attestation services, professional tax planning and compliance, fiduciary services to ESOPs, ERISA compliance, valuation of business entities and business assets, and litigation support. I have been engaged in approximately 75 ESOP transactions (i.e., serving as an independent trustee to buy or sell employer stock), and I have served seven ESOP-owned companies as an ongoing trustee.

1.6.2. I have published no professional articles or books in the past 10 years.

1.6.3. Litigation for which I provided expert testimony is attached hereto.

1.7. <u>Independence and conflicts of interest.</u>

1.7.1. I am independent[1] of the parties to this litigation and I have no conflicts of interest with any litigant in this litigation.

---

[1] Independence is defined for my purposes by the American Institute of Certified Public Accountants. Strictly speaking, independence is required only in attestation engagements, and I am not performing attestation or assurance services for this litigation. See, for example, https://pcaobus.org//Standards/EI/Pages/ET101.aspx, accessed 02 April 2018.

1.8.    Sources

Selected data on which I relied is listed at Appendix B – Selected Data Reviewed For This Report.

1.9.    Compliance with Fed. R. Evid. 702 and Fed R. Civ. P. 26(a)(2).

My qualifications, my professional work, and this report are intended to satisfy Fed. R. Evid. 702 and Fed R. Civ. P. 26(a)(2).

1.10.   Revisions.

I respectfully reserve the right to revise my report for additional information and other developments.


## 2.    SELECTED DEFINITIONS

2.1.    Subject Legal Action.

The subject legal action is Civil Action No. 6:17-cv-01875-BHH-KFM in South Carolina District Court, Greenville Division.

2.2.    Presiding Judge.

The presiding judge is Judge Bruce H. Hendricks.[2]

2.3.    Magistrate Judge.

The magistrate judge is Judge Kevin F. McDonald.

2.4.    Plaintiff.

The Plaintiff is Tara D. Taylor. Taylor began employment at Fluor or affiliates in April 2009 and worked for Fluor through December 2018. Taylor's date of birth is 02 January 1967.[3] Taylor was mobilized for Afghanistan and arrived 02 November 2011. Taylor has been a Florida resident since February 2015.

2.5.    Attorney for Plaintiff.

Plaintiff's attorney is Brian P. Murphy of STEPHENSON & MURPHY, LLC, 207 Whitsett St., Greenville, SC, 29601.

2.6.    Defendants.

2.6.1.  Defendant FLUOR is FLUOR CORPORATION.

2.6.2.  Defendant FGG is Fluor GOVERNMENT GROUP INTERNATIONAL, INC.

2.7.    Attorney for Defendants.

2.7.1.  Defendants' attorney is T. Chase Samples of JACKSON LEWIS, P.C., 15 South Main Street, Suite 700, Greenville, SC, 29601.

---

[2]  Originally assigned to Judge Mary Geiger Lewis, then Judge Donald C. Coggins, Jr.

[3]  Tara Taylor deposition, 26 April 2018, page 16, line 25.

2.8.    <u>DoD</u>.

2.8.1.    DoD is the U.S. Department of Defense.

2.9.    <u>LOGCAP</u>.

LOGCAP stands for Logistics Civil Augmentation Program and is the U.S. Army's premier capability to support global contingencies by leveraging corporate assets to augment Army current and programmed sustainment force structure.[4] LOGCAP services include "basic life services ranging from shower and latrine, food service preparation and meals, Moral Welfare and Recreation, or MWR, to fire protection services provided by LOGCAP performance contractor Fluor Corporation."[5]

2.10.    <u>LOGCAP Contract Terms</u>.

2.10.1.    <u>FOB</u> is Forward Operating Base.

2.10.2.    <u>M&A</u> is Management and Administration personnel.

2.10.3.    <u>PWS</u> is Performance Work Statement or (Fluor's) Scope of Work (i.e., facilities maintenance, vehicle maintenance, laundry, dining facilities, management and administration (M&A), and, etc.).

**3.    INTRODUCTION AND BACKGROUND**

3.1.    <u>Fluor's contract in Afghanistan.</u>

In June 2007, Defendant (along with DynCorp International) won a competitive bid for contracts under the DoD program known as LOGCAP IV.[6] The contracts were for a base year with options for each of the nine succeeding years.



3.2. <u>Staffing and premature departure.</u>

3.2.1.    Private contractors like Fluor offer financial incentives to motivate qualified candidates for employment and assignment under DoD contracts, which support American troops in battle.

3.2.2.    Significant academic research has been published to

---

[4]    https://www.army.mil/article/83543/logcap_completes_base_de_scoping_for_turnover_of_fob_dubs, accessed 09 November 2018.

[5]    https://www.army.mil/article/83543/logcap_completes_base_de_scoping_for_turnover_of_fob_dubs, accessed 09 November 2018.

[6]    Contract #W52P1J-07-0008.

address the phenomenon of expatriate's premature departure from assignments, including stressful military assignments. For example:

> "Overall, the results of our research were alarming. We found that between 10% and 20% of all U.S. managers sent abroad returned early because of job dissatisfaction or difficulties in adjusting to a foreign country. Of those who stayed for the duration, nearly one-third did not perform up to the expectations of their superiors. And perhaps most problematic, one-fourth of those who completed an assignment left their company, often to join a competitor, within one year after repatriation. That's a turnover rate double that of managers who did not go abroad."[7]

3.3.    <u>Troop levels.</u>

3.3.1.    The activities and staffing levels of private contractors, such as Fluor, are directly related to and the result of American troop levels in Afghanistan.

3.3.2.    At the request of the Department of the Army, Fluor published a demobilization plan for 01 March 2014.[8]

> "**<u>Purpose:</u>** Develop a contractor drawdown plan and submit to the Contracting Officer by 01 March 2014 (due 120 days prior to the end of the current contract year) that is based on current official guidance from the US Government (USG).
>
> **<u>Background:</u>** Fluor is responsible for demobilizing all project personnel and Fluor owned equipment from the Afghanistan Combined Joint Operations Area (CJOA) at the end of the period of performance. The United States Military has begun its draw down of forces in Afghanistan with a goal of reaching an enduring footprint by the end of 2014.
>
> Fluor has had responsibility for the service and support requirements at 76 Forward Operating Bases (FOBs) in Northern Afghanistan since 2010. As of February 2014, 54 of these FOBs have been successfully closed or transferred and 12 more FOBs are scheduled for closure/transfer by the end of 2014. That will leave 10 FOBs in Fluor's area of responsibility that are anticipated to be enduring bases with Bagram Airfield being the largest.
>
> By the end of Option Year 3 on 30 June 2014 Fluor will have 17 FOBs and approximately 13,271 personnel (8,425 EXPATs & OCNs / 4,846 LNs) in the CJOA.
> *Note: This includes all FOBs scheduled to close by 15 July 2014*"
> [Emphases in original]

3.3.3.    On 03 March 2014, Gregory K. Johnston, Procuring Contract Officer, Logistics Civil Augmentation Program sent a letter to Joseph Poniatowski, Functional Director, Prime Contract Management, Fluor International, Inc. with the following information:

---

[7]    "*The Right Way to Manage Expats,*" by J. Stewart Black and Hal B. Gregersen, Harvard Business Review, March-April 1999.

[8]    DEF 003497



**Figure 1. U.S. Armed Forces and Contractor Personnel in Afghanistan**
Q4 FY2007-Q4 FY2018

Legend: Private Security Contractors | Other Contractors | —○— U.S. Armed Forces

**Source:** Contractor levels drawn from CENTCOM Quarterly Contractor Census Reports; U.S. Armed Forces levels through Q4 FY2017 drawn from "Boots on the Ground" monthly reports to Congress.

**Notes:** DOD did not begin releasing data on contractors in CENTCOM until Q4 FY2007. U.S. Armed Forces levels include all active and reserve component personnel.

Source: Department of Defense Contractor and Troop Levels in Afghanistan and Iraq: 2007-2018, Updated May 10, 2019, Congressional Research Service, https://crsreports.congress.gov, R44116

**Table 1. U.S. Armed Forces and Contractor Personnel in Afghanistan**
(Q4 FY2007-Q4 FY2018)

| | U.S. Armed Forces | Total Contractors | U.S. Nationals Contractors | Foreign and Host Country National Contractors |
|---|---|---|---|---|
| Q4 FY2007 | 24,056 | 29,473 | 3,387 | 26,086 |
| Q1 FY2008 | 24,780 | 36,520 | 5,153 | 31,367 |
| Q2 FY2008 | 28,650 | 52,336 | 4,220 | 48,116 |
| Q3 FY2008 | 33,902 | 41,232 | 4,724 | 36,508 |
| Q4 FY2008 | 33,450 | 68,252 | 5,405 | 62,847 |
| Q1 FY2009 | 32,500 | 71,755 | 5,960 | 65,795 |
| Q2 FY2009 | 38,350 | 68,197 | 9,378 | 58,819 |
| Q3 FY2009 | 55,100 | 73,968 | 10,036 | 62,932 |
| Q4 FY2009 | 62,300 | 104,101 | 9,322 | 94,779 |
| Q1 FY2010 | 69,000 | 107,292 | 10,016 | 97,276 |
| Q2 FY2010 | 79,100 | 112,092 | 16,081 | 96,011 |
| Q3 FY2010 | 93,800 | 107,479 | 19,103 | 88,376 |
| Q4 FY2010 | 96,600 | 70,599 | 20,874 | 49,725 |
| Q1 FY2011 | 96,900 | 87,483 | 19,381 | 68,102 |
| Q2 FY2011 | 99,800 | 90,339 | 20,413 | 69,926 |
| Q3 FY2011 | 98,900 | 93,118 | 23,294 | 69,824 |
| Q4 FY2011 | 98,200 | 101,789 | 23,190 | 78,599 |
| Q1 FY2012 | 94,100 | 113,491 | 25,287 | 88,204 |
| Q2 FY2012 | 88,200 | 117,227 | 34,765 | 82,462 |
| Q3 FY2012 | 85,600 | 113,736 | 30,568 | 83,168 |
| Q4 FY2012 | 76,500 | 109,564 | 31,814 | 77,750 |
| Q1 FY2013 | 65,800 | 110,404 | 33,444 | 76,960 |
| Q2 FY2013 | 65,700 | 107,796 | 33,107 | 74,689 |
| Q3 FY2013 | 61,300 | 101,855 | 32,442 | 69,413 |
| Q4 FY2013 | 55,800 | 85,528 | 27,188 | 58,340 |
| Q1 FY2014 | 43,300 | 78,136 | 23,763 | 54,373 |
| Q2 FY2014 | 33,200 | 61,452 | 20,865 | 40,587 |
| Q3 FY2014 | 31,400 | 51,489 | 17,404 | 34,085 |
| Q4 FY2014 | 27,800 | 45,349 | 17,477 | 27,872 |
| Q1 FY2015 | 10,600 | 39,609 | 14,222 | 25,387 |
| Q2 FY2015 | 9,100 | 36,030 | 12,033 | 10,787 |
| Q3 FY2015 | 9,060 | 28,931 | 10,019 | 18,912 |
| Q4 FY2015 | 9,100 | 30,211 | 10,547 | 19,664 |
| Q1 FY2016 | 8,930 | 30,455 | 10,151 | 20,304 |

| | U.S. Armed Forces | Total Contractors | U.S. Nationals Contractors | Foreign and Host Country National Contractors |
|---|---|---|---|---|
| Q2 FY2016 | 8,730 | 28,626 | 9,640 | 18,986 |
| Q3 FY2016 | 9,365 | 26,435 | 8,837 | 17,598 |
| Q4 FY2016 | 9,800 | 25,197 | 9,142 | 16,055 |
| Q1 FY2017 | 9,300 | 26,072 | 9,474 | 16,548 |
| Q2 FY2017 | 8,400 | 24,900 | 9,522 | 15,378 |
| Q3 FY2017 | 8,300 | 23,525 | 9,436 | 14,089 |
| Q4 FY2017 | 11,100ᵃ | 23,659 | 9,418 | 14,241 |
| Q1 FY2018 | Not Available | 26,043 | 10,189 | 15,854 |
| Q2 FY2018 | Not Available | 26,647 | 10,891 | 15,756 |
| Q3 FY2018 | Not Available | 26,922 | 10,128 | 16,794 |
| Q4 FY2018 | Not Available | 25,239 | 10,989 | 14,250 |

**Sources:** Contractor levels from CENTCOM Quarterly Contractor Census Reports; U.S. Armed Forces levels through Q4 FY2017 drawn from "Boots on the Ground" monthly reports to Congress.

**Note:** DOD did not begin releasing data on contractors in CENTCOM until Q4 FY2007. U.S. Armed Forces levels include all active and reserve component personnel.

a. In August 2017, DOD revised its force management level accounting and reporting practices for Afghanistan to include U.S. Armed Forces personnel in-country for short-duration missions, personnel in a temporary duty status, personnel assigned to combat support agencies, and forces assigned to the material recovery element and the Resolute Support sustainment brigade in reported totals. See U.S. Department of Defense, Press Operations, "Department of Defense Afghanistan Force Management Level Accounting and Reporting Practices Briefing by Pentagon Chief Spokesperson White and Joint Staff Director Lieutenant General McKenzie in the Pentagon Briefing Room," transcript, August 30, 2017.

"OY4 will see a significant reduction in forward operating bases (FOBs) ultimately leading into the Resolute Support Mission (RSM) end state. In addition to anticipated reductions in level of effort resulting from base closures, there is expected to be a significant reduction in LOGCAP supported population across Northern Afghanistan."

The letter also references "the Accelerated Drawdown Plan III (ADP3) and other reductions anticipated to occur in the Theatre …".

3.3.4. Private contractors for LOGCAP IV, as with their predecessors, experienced changing demands in the number of expatriated employees. Fluor's 2017 annual report included this comment:

"…the continued **reduction** in project execution activities associated with the LOGCAP IV program in Afghanistan."[9] [emphasis added]

3.3.5. By 2014, staffing levels under LOGCAP IV already were in severe decline, a trend which continued except for a minor halt in the third quarter of 2017, which indicates the declining probability of the Plaintiff's continued employment in this theater.


4. **PLAINTIFF'S EMPLOYMENT BY DEFENDANT**

4.1. Tara D. Taylor's employment with Defendant Fluor.

Plaintiff Taylor was most recently hired by Fluor Government Group International, Inc. (one of the Defendants) on April 4, 2011, as a Prime Contracts Management Principle Specialist in the Greenville home office and was deployed to Afghanistan in October of the same year. She was promoted to a Prime Contracts Supervisor in February of 2014. She remained in that position until she demobilized from the project on September 24, 2014. She continued to be employed by Fluor Government Group in Greenville from October 2014 until February 2015 when she accepted an HR Manager position in Jacksonville, Florida with Fluor Federal Solutions, a position she held until 31 December 2018.

Selected payroll information illustrating components of Plaintiff's earnings is presented below.

4.1.1. The evidence produced in this case by Ms. Taylor indicates that she failed to mitigate her damages by applying for work that would pay her a higher rate than she was making at Fluor between 24 September 2014 and 12 March 2016.[10]

4.1.2. I have seen no confirming evidence Ms. Taylor made any effort to mitigate her putative lost earnings between 24 September 2014 and 12 March 2016.

---

[9] Fluor's 2017 Annual Report, page 42.

[10] See Exhibit 10 – Job Search Chart for Supplemental Discovery (Tara D. Taylor) summarizing the external positions to which she applied.

**Table 1- Selected Payroll Information**

| Taylor v. Fluor et al | | | | | Projected |
| Pay Period ==> | 30-Nov-13 | 30-Nov-13 | 20-Sep-14 | 20-Sep-14 | 29-Nov-14 |
| Pay | Rate | $ | Rate | $ | $ |
|---|---|---|---|---|---|
| **Weeks** | | 52 | | 42 | 52 |
| **Gross** | | | | | |
| Regular | 38.82 | 67,282.88 | 41.15 | 63,591.20 | 78,731.96 |
| OT Straight | 38.82 | 64,679.80 | 41.15 | 65,353.87 | 80,914.32 |
| Travel Time | | 6,790.40 | | 3,292.00 | 4,075.81 |
| Hardship | | 28,028.84 | | 23,292.00 | 28,837.71 |
| FSI | | 8,023.64 | | 6,664.80 | 8,251.66 |
| Out of Country | | 621.12 | | 329.20 | 407.58 |
| Period Leave | | 12,162.32 | | 2,633.60 | 3,260.65 |
| Hazard Allowance | | 23,553.76 | | 22,255.20 | 27,554.06 |
| Lump Sum Expat Allowance | | 8,000.00 | | 4,750.00 | 4,750.00 |
| Home/Family Visit | | 13,024.00 | | 6,512.00 | 8,062.48 |
| AP-Meals-Supl Tax | | 286.00 | | 143.00 | 177.05 |
| AP-Hom/Family Visit | | 3,256.00 | | 3,256.00 | 3,256.00 |
| **Total** | | **235,708.76** | | **202,072.87** | **248,279.27** |
| Federal Withholding | | 14,634.75 | | 11,761.03 | 14,561.28 |
| FICA-OASDI | | 7,049.40 | | 7,254.00 | 8,981.14 |
| FICA-HI | | 3,739.16 | | 2,948.71 | 3,650.78 |
| Georgia Withholding | | 13,032.85 | | 13,032.85 | 16,135.91 |
| 401k Deferral | | 13,028.52 | | 13,028.52 | 16,130.55 |
| **Total** | | **51,484.68** | | **48,025.11** | **59,459.66** |
| **Net Payroll Disbursements** | $ | **184,224.08** | | **154,047.76** | **188,819.61** |

4.2.    <u>Tara D. Taylor's mobilization to Afghanistan.</u>

4.2.1.  Fluor records specify Ms. Taylor arrived in Afghanistan on 02 November 2011 as a Grade 18 "new hire" assigned to Prime Contract Management with a base salary of $75,000.[11] Taylor de-mobilized on 25 Sep 2014 with grade and status as Supervisor, Prime Contracts due to "reduction of work force" after nearly 3 years on the project. As a supervisor in the Prime Contracts department, Taylor's position was considered a Management and Administration ("M&A") position.

4.2.2.  Just before Ms. Taylor's mobilization in November 2011, Rachelle Weber, a Fluor Prime Contracts Manager at Grade 20, was mobilized on 11 August 2011.[12] Weber was de-mobilized 29 August 2015, still at Grade 20 Manager after 4 years.[13]

---

[11] Taylor's SAP reference is 10288600.

[12] SAP reference 10333755, with base pay at $95,000.

[13] Base pay rose in the intervening months from $95,000 to $105,360.

4.2.3.   Fluor's stated reason for Ms. Weber's demobilization was the same as it was for Ms. Taylor's: "reduction in work force" to align the organizational structure with the established basis of estimate.

## 5.   CALCULATIONS AND CONCLUSION OF PUTATIVE DAMAGES

5.1.   <u>General assumptions.</u>

5.1.1.   My damages calculations reflect the assumption that the court has determined back pay damages are recoverable by Plaintiff.

5.1.2.   I projected the ongoing earnings as if Plaintiff's mobilization continued. For purposes of annual pay during assumed post-September 2014 mobilization, I used an annualized estimate of Taylor's reported earnings through September 2014. I calculated that amount to be $248,000. For purposes of estimating future pay increases, I used the Employer Cost Index published by the Bureau of Labor Statistics.[14]

5.1.3.   I considered Plaintiff's actual earnings after her demobilization. In the absence of actual earnings after her demobilization, I forecasted her earnings.

5.1.4.   The difference between ongoing mobilization compensation and actual compensation represents putative damages.

5.2.   <u>Probability-weighted calculations of putative damages.</u>

The parties to this lawsuit point to different clauses for Plaintiff's demobilization. Plaintiff alleges wrongful acts by Defendant; Defendant assigns the cause decisions made to implement a workforce reduction that was mandated two years earlier and continued through dates after Plaintiff's demobilization.

In short (using my words and without making any legal assertions), Plaintiff's claim is that:

> But for Defendant's (alleged) wrongful acts, there was 100% certainty she still would mobilized to Afghanistan and working in her same position, earning approximately the same compensation, through June 2021 and, therefore, compensation for putative damages (i.e., lost earnings) is warranted.

Defendant's opposing view (using my words and without making any legal assertions) is:

> From the mandate in 2012 to reduce civilian staffing in Afghanistan, uncertainty escalated for Plaintiff's continuing assignment to the same position and, therefore, compensation for putative damages (i.e., lost earnings) is not warranted.

Before Plaintiff's demobilization event in September 2014, there was a clear trend for private workforce reductions under the LOGCAP IV program.[15] When the directive for workforce reduction became

---

[14] https://www.bls.gov/news.release/eci.toc.htm, accessed 14 November 2018.

[15] The high point of the U.S. Nationals (civilian) contractors count was 34,765, during 2012 and 2013, and by September 2014 the count was 17,404. See Source: Department of Defense Contractor and Troop Levels in Afghanistan and Iraq: 2007-2018, Updated May 10, 2019, Congressional Research Service, https://crsreports.congress.gov, R44116.

effective, and while the workforce reduction was being implemented, the probability significantly rose that Plaintiff would be demobilized from her assignment in Afghanistan before June 2021. Such heightened probability existed independently of the Plaintiff's allegations and are not related to whether the jury finds in favor of the Plaintiff's allegations against the Defendant.

Plaintiff was demobilized in September 2014 and no person can transcend our human limitations and recreate an alternative reality for re-living and documenting the circumstances of Plaintiff's demobilization. There was one discoverable outcome: Plaintiff's demobilization from the Afghanistan war theater in September 2014. Other possible outcomes for 2014 through 2021 can be estimated based on available data. No data exists to compel belief in 100% certainty of Plaintiff's continuing mobilization through June 2021, and an assumption of 100% certainty is unreasonable and unreliable. Therefore, we must estimate the probability of Plaintiff's continuing mobilization through June 2021. I will propose several ways to estimate the probability and weight the claimed damages for the estimated probability.

5.2.1.  Probability-weighted by M&A count

5.2.2.  I calculated probability-weighted (putative) damages to relate the uncertainty of Plaintiff's continuing mobilization by the declining M&A[16] count. This method assumes Plaintiff will continue in her job position in mobilization through June 2021. The putative damages are reduced to reflect the declines in M&A through June 2021.

My calculations are presented in Exhibit 2 – Calculated Mobilization Earnings Compared to Demobilization Earnings. This probability-weighted approach gives $177,700,[17] assuming the jury finds all categories of Plaintiff's compensation are recoverable as damages and does not adjust for Plaintiff's failure to mitigate her damages through 12 March 2016. This amount is reduced to $122,400 if the jury finds the Plaintiff failed to mitigate her damages through 12 March 2016.

5.3.    Discount rates for putative damages based on earnings.

5.3.1.  The spot rate for 1-year US Treasury instruments reflects the relevant basis for the discount rate to determine the present value of the putative damages. I have not discounted to present value because the adjustment for time value of money is not a significant amount.

5.4.    Conclusion of putative damages.

5.4.1.  I have not formed an opinion that the Plaintiff is entitled to recover damages.

5.4.2.  My calculations of putative damages are based on the probability-weighted difference in compensation, recognizing the demobilization trend. The range of damages I determined are $122,400 and $177,700 assuming the court determines putative damages are recoverable by Ms. Taylor.


# 6.   REBUTTAL OF PLAINTIFF EXPERT'S REPORT

6.1.    Plaintiff's expert report.

---

[16] M&A = management and administration job category.

[17] This amount is reduced to $122,400 if the jury finds the Plaintiff failed to mitigate her damages through 12 March 2016.

6.1.1.    Charles L. Alford, PhD published a report disclosing his expert testimony, dated 04 June 2018, and updated 14 November 2019.

6.2.    <u>Alford's approach to damages.</u>

6.2.1.    Alford's damages report assumes Ms. Taylor is entitled to recover her mobilization-level earnings, including base pay, overtime pay, combat zone compensation, employer retirement contributions, and fringe benefits, and also income tax benefits, from 01 October 2014 through 30 June 2021. To that end, he reconstructed specific components of her W-2 compensation to which he adds employer matching contributions, meals and incidentals grossed up to the equivalent of pre-tax earnings, the value of lodging grossed up to the equivalent of pre-tax earnings, and the benefit of an income tax exclusion of compensation available to U.S. citizens working abroad provided certain conditions are satisfied. Alford then deducted an estimate of Ms. Taylor's earnings ability outside of a combat zone setting.

6.3.    <u>Meals and incidentals and lodging provided in Afghanistan.</u>

6.3.1.    Dr. Alford erroneously included meals and lodging in his calculation of Plaintiff's damages.

6.3.2.    Fluor provided Plaintiff with meals and lodging at her place of employment in Afghanistan.

Normally, the U.S. Internal Revenue Code requires taxation of meals and lodging provided by an employer. According to IRS Publication 54 – <u>*Tax Guide for U.S. Citizens and Resident Aliens Living Abroad*</u>:[18]

> "If you receive fringe benefits in the form of the right to use your employer's property or facilities, the fair market value of that right is earned income."

6.3.3.    The meals and lodging arrangement provided to Ms. Taylor in Afghanistan were not added to the Plaintiff's taxable wages, an exclusion authorized by the U.S. Internal Revenue Code and related Treasury regulations when the arrangements are for the benefit of the employer (i.e., the Defendants).[19]

> **Treasury Regulation §1.119-1 Meals and lodging furnished for the convenience of the employer.**
>
> (1) In general. The value of meals furnished to an employee by his employer shall be excluded from the employee's gross income if two tests are met:
>
> > (i) The meals are furnished on the business premises of the employer, and
> >
> > (ii) the meals are furnished for the convenience of the employer. The question of whether meals are furnished for the convenience of the employer is one of fact to be determined by analysis of all the facts and circumstances in each case. If the tests described in subdivisions (i) and (ii) of this subparagraph are met, the exclusion shall apply irrespective of whether under an employment contract or a statute fixing the terms of employment such meals are furnished as compensation.

6.3.4.    IRS Publication 54 discusses the requirements: "convenience of employer" and "condition of employment."

---

[18] IRS Publication 54 – <u>*Tax Guide for U.S. Citizens and Resident Aliens Living Abroad*</u>, https://www.irs.gov/publications/p54, accessed 15 November 2018.

[19] Reg. § 1.119-1. Meals and lodging furnished for the convenience of the employer.

"**Convenience of employer**. Whether meals or lodging are provided for your employer's convenience must be determined from all the facts and circumstances. Meals furnished at no charge are considered provided for your employer's convenience if there is a good business reason for providing them, *other than to give you more pay*. [emphasis added]

On the other hand, if your employer provides meals to you or your family as a means of giving you more pay, and there is no other business reason for providing them, their value is extra income to you because they aren't furnished for the convenience of your employer.

**Condition of employment**. Lodging is provided as a condition of employment if you must accept the lodging to properly carry out the duties of your job. You must accept lodging to properly carry out your duties if, for example, you must be available for duty at all times or you could not perform your duties if the lodging wasn't furnished."

6.3.5.   The tax treatment of reimbursements for away-from-home meals and lodging costs is clearly distinguishable from the income tax provisions of IRC §119. Under other provisions of the Internal Revenue Code and Treasury regulations, the location of an employee's tax home normally depends on whether his or her work assignment is expected to be temporary or indefinite. If an employee's work assignment is expected to be for an indefinite period or more than 1 year, the employee's place of employment becomes his or her tax home.

"To determine whether you are traveling away from home, you must first determine the location of your tax home."

"Generally, your tax home is your regular place of business or post of duty, regardless of where you maintain your family home. It includes the entire city or general area in which your business or work is located."[20]

6.3.6.   When the employee's place of employment becomes his or her tax home, the employee cannot deduct or be reimbursed on a tax-free basis for any away-from-home expenses. Unlike non-taxable meals and lodging for the convenience of the employer (IRC §119), reimbursements of away-from-home costs are presumed to be bargained-for employment earnings and, as such, are treated as taxable remuneration.

"If you are a member of the U.S. Armed Forces on a permanent duty assignment overseas, you aren't traveling away from home. You can't deduct your expenses for meals and lodging."

"You may be reimbursed under your employer's accountable plan for expenses related to that employer's business, some of which are deductible as employee business expenses and some of which aren't deductible. The reimbursements you receive for the nondeductible expenses don't meet rule (1) for accountable plans, and they are treated as paid under a nonaccountable plan."

---

[20] "Publication 463 (2017), Travel, Entertainment, Gift, and Car Expenses," https://www.irs.gov/publications/p463#en_US_2017_publink100033753, accessed 15 November 2018.

"Your employer will combine the amount of any reimbursement or other expense allowance paid to you under a nonaccountable plan with your wages, salary, or other pay. Your employer will report the total in box 1 of your Form W-2."[21]

6.3.7. Instead of a form of bargained-for employment earnings, the meals and incidentals and lodging costs provided by Fluor to Ms. Taylor were provided for the convenience of the employer and realized only when conditions imposed by IRC §119 – not conditions imposed by the employer – are satisfied. This arrangement made for the convenience of the employer should not be treated as damages recoverable by Ms. Taylor. Therefore, Alford's damages calculations for meals and incidentals and lodging are biased and unreliable.

6.3.8. <u>Tax-effected meals and incidentals</u>. There are other flaws in Alford's meals and incidentals calculations.

6.3.8.1. First, Alford has made no adjustment to his damages calculations for meals and incidentals during Ms. Taylor's vacation time. Of 1,057 days tracked by FLUOR, Taylor took 110 "R&R" days, or 10.41% time off. No evidence was produced to indicate FLUOR reimbursed or otherwise paid for Ms. Taylor's meals and incidentals while she was on vacation.[22]

6.3.9. <u>Conclusion</u>. In summary, meals and lodging were furnished by Fluor for the "convenience of the employer" on premises provided by Fluor through contractual arrangements under LOGCAP IV. Counting meals and lodging as Ms. Taylors's recoverable damages would constitute an economic windfall for the Plaintiff at the Defendants' expense. Therefore, I dispute the validity and accuracy of Dr. Alford's tax-effected meals and incidentals and lodging. For these and other reasons, these components of his calculations do not qualify as recoverable damages.

6.4. <u>Foreign earned income exclusion (from taxable income) for expatriate status in Afghanistan.</u>

6.4.1. Dr. Alford erroneously included tax savings from the foreign income exclusions in his calculation of Plaintiff's damages.

6.4.2. U.S. citizens or resident aliens living abroad generally are taxed on their worldwide income. However, employees may qualify for an exclusion of foreign earnings or an exclusion or deduction for certain foreign housing amounts.[23] Employers do not need to withhold federal income taxes from wages paid to employees whose wages they reasonably expect will be excluded from income under IRC §911.[24]

---

[21] "Publication 463 (2017), Travel, Entertainment, Gift, and Car Expenses," https://www.irs.gov/publications/p463#en_US_2017_publink100033753, accessed 15 November 2018.

[22] Such reimbursements for away-from-home expenses would be taxable.

[23] IRC §§911(a) and (b).

[24] See https://www.irs.gov/individuals/international-taxpayers/foreign-earned-income-exclusion, accessed 11 November 2018.

*Table 2- Foreign Income*

| Year | | Amount | Foreign Earned Income Reported[25] | Exclusion claimed by Tara Taylor | Full Days in the U.S. | Qualifying Days |
|------|---|--------|------------------------------------|----------------------------------|-----------------------|-----------------|
| 2012 | $ | 95,100 | Not produced | Not produced | Not produced | Not produced |
| 2013 | | 97,600 | 222,683 | 90,963 | 25 | 340 |
| 2014 | | 99,200 | 220,160 | 90,768 | 31 | 334 |
| 2015 | | 100,800 | Not produced | Not produced | Not produced | Not produced |
| 2016 | | 101,300 | Not produced | Not produced | Not produced | Not produced |
| 2017 | | 102,100 | Not produced | Not produced | Not produced | Not produced |
| 2018 | | 105,900 | Not produced | Not produced | Not produced | Not produced |
| 2019 | | 107,600 | Not produced | Not produced | Not produced | Not produced |
| 2020 | | 109,450 | Not produced | Not produced | Not produced | Not produced |
| 2021 | Forecast | 111,300 | Not produced | Not produced | Not produced | Not produced |

6.4.3.    <u>Requirements</u>. To claim the IRC §911 exclusion or the foreign housing cost deduction, employees must have foreign earned income, their tax home must be in a foreign country, and they must be one of the following:

(i)    A U.S. citizen who is a bona fide resident[26] of a foreign country or countries for an uninterrupted period that includes an entire tax year. Generally, a foreign country is any territory (including the air space and territorial waters) under the sovereignty of a government other than the U.S. Territories and possessions of the U.S. are not foreign countries.[27] A U.S. resident alien who is a citizen or national of a country that has an income tax treaty in effect with the U.S. and who is a bona fide resident of a foreign country or countries for an uninterrupted period that includes an entire tax year.[28]

(ii)    A U.S. citizen or a U.S. resident alien who is physically present in a foreign country or countries for at least 330 full days during any period of 12 consecutive months.

6.4.4.    <u>Foreign earned income exclusion is not granted by or controlled by Defendants</u>. The foreign earned income exclusion is an income tax provision based on statutory authorization and subject to conditions imposed on individual taxpayers (not employers). The employee's potential income tax benefit is not bargained-for between the employer and employee; is not awarded by the employer; is not based on an employer's compliance. The foreign income exclusion remained available to Ms. Taylor even after her demobilization, yet the Job Search Chart[29] indicates Ms. Taylor infrequently sought foreign employment after September 2014. Counting this conditional income tax benefit as damages recoverable by Ms. Taylor would constitute an economic windfall for the Plaintiff at Defendants' expense.

---

[25] The information pertaining to the foreign exclusion claimed by Tara Taylor was derived from Form 1040s for Andrew S. and Tara D. Taylor.

[26] The bona fide residence test applies to U.S. citizens and resident aliens who are citizens or nationals of a country that has an income tax treaty in effect with the U.S. [IRC §911(d)(1)(A); Reg. §1.911-2(c)] An employee's bona fide residence is not necessarily the same as his or her domicile. A domicile is the employee's permanent home (i.e., the place where an employee always returns or intends to return even though currently residing elsewhere).

[27] See IRS Pub. 54 – Tax Guide for U.S. Citizens and Resident Aliens Abroad and Treas. Reg. §1.911-2(a).

[28] See Rev. Rul. 91-58.

[29] See Exhibit 9 – Job Search Chart for Supplemental Discovery (Tara D. Taylor).

6.4.5. As such, Dr. Alford's calculation of "Additional Lost Disposable Income Due to Loss of Foreign Income Exclusion" does not represent damages recoverable by Ms. Taylor. Therefore, I have assigned no value to Plaintiff's putative ineligibility to exclude foreign earned income from Federal income tax.

6.5. <u>Re-calculated earnings without erroneous 401(k) match</u>

6.5.1. Dr. Alford erroneously included 401K) matching in his calculation of Plaintiff's damages.

6.5.2. Dr. Alford's damages calculations reflect his estimate of putative lost earnings from 01 October 2014 through 30 June 2021.

| From Alford Report | Alford's Damages Amount[30] | Alford's Damages Amount without 401(k) match (see discussion below) |
|---|---|---|
| W-2 comp | $953,968 | $983,968 |
| Discount to present value | - 1,836 | - 1,836 |
| Subtotal | 952,132 | 952,132 |
| 401k match (see discussion below) | 28,564 | -- |
| Subtotal | 980,696 | 952,132 |
| Meals, lodging, etc. | 208,259 | 208,259 |
| Subtotal | 1,188,955 | 1,160,391 |
| Inc tax on foreign inc excl | 169,526 | 169,526 |
| **Total Damages (Alford)** | **$1,358,481** | **$1,329,917** |

6.5.3. Dr. Alford failed to consider the definition of compensation for Fluor's 401(k) matching benefit.[31] The Summary Plan Description, a disclosure document required by ERISA, specifies eligible and ineligible compensation as follows:

| Eligible Compensation | Ineligible Compensation |
|---|---|
| Paid time off | Bonuses |
| Vacation pay | Commissions |
| Sick pay | Incentives |
| Military differential pay | Site adders |
| -- | Overtime |
| -- | Other irregular payments |

Dr. Alford rightly assumed a comparable 401(k) matching benefit accrued on Taylor's mitigating compensation, what he calls "Gross pay with transfer to States", which is the compensation Plaintiff did earn or could have earned after her demobilization. He calculated a 401(k) matching benefit "equal to 3% of gross lost compensation", which is the excess of (putative) "Gross pay without transfer to States" over "Gross pay with transfer to States." However, that excess is wholly comprised of compensation

---

[30] Amounts herein might differ from Alford's report by rounding.

[31] Alford calculated a post demobilization matching contribution at 3%.

ineligible for Fluor's 401(k) matching benefit. Using the Fluor 401(k) plan's definition of eligible compensation eliminates the employer matching component of Alford's damages. Therefore, Dr. Alford's calculation of the 401(k) employer matching benefit is biased and unreliable. Hereafter, Alford's employer matching contribution of $28,564 will be eliminated from my analysis of his damages.

6.6.    Re-calculated earnings adjusted for failure to mitigate.

6.6.1.  Dr. Alford erroneously failed to consider the period when Plaintiff did not attempt to mitigate her damages.

6.6.2.  Assuming the Court were to find that Ms. Taylor mitigated her damages after 12 March 2016, Alford's damages would be reduced from 01 October 2014 through 12 March 2016 as follows:

| Re-calculated Damages – Failure to Mitigate[32] | Periods | Damages: W-2 Comp Only | Damages: Meals & lodging | Damages: Foreign Inc Excl | Damages: Total |
|---|---|---|---|---|---|
| Reported amount (Alford) $ | 01 Oct 2014 through 30 Jun 2021 | 952,132 | 208,259 | 169,526 | 1,329,917 |
| Reduction for failure to mitigate | 01 Oct 2014 through 12 Mar 2016 | -234,167 | -44,378 | - 36,454 | - 315,000 |
| **Re-calculated damages (Alford) $** | 13 Mar 2016 through 30 June 2021 | **717,965** | **163,881** | **133,072** | **1,014,917**[33] |

6.7.    Re-calculated earnings without salary uplift earnings.

6.7.1.  Dr. Alford's damages calculations include a component for hazard pay and hardship allowance, referred to as salary uplift.[34] This category of compensation is designed for the specific job conditions of war theater for which there is a tiny market. I am unaware of whether such types of compensation are commonly treated as recoverable lost wages.

6.7.2.  I have not seen evidence that Ms. Taylor sought job positions with hazard pay and hardship allowance until mid-2016. If Alford's damages calculations from 01 October 2014 through 30 June 2021 were re-calculated to remove salary uplift, the following re-calculated amounts are obtained from his report.

---

[32] Amounts herein might differ from Alford's report by rounding.

[33] Alford's damages calculations include an erroneous 401k match benefit of $28,564, of which $10,967 are attributed to this period. Alford's amounts which include the match are higher than my revision to correct his calculations.

[34] Salary uplift is set at a percentage of base pay that has changed over time: earlier 80%, then 55%, now 45%.

| Re-Calculated Damages – Salary Uplift (Alford)[35] | Periods | Damages: W-2 Comp Only | Damages: Meals & lodging | Damages: Foreign Inc Excl | Damages: Total |
|---|---|---|---|---|---|
| Damages reported amount (Alford) $ | 01 Oct 2014 through 30 Jun 2021 | 952,132 | 208,259 | 169,526 | 1,329,917 |
| less salary uplift (Alford) | 01 Oct 2014 through 30 Jun 2021 | - 348,472 | -- | -- | - 348,472 |
| **Re-calculated damages (Alford) $** | 01 Oct 2014 through 30 Jun 2021 | **603,660** | **208,259** | **169,526** | **981,445** |

6.8.  <u>Income Tax Effect of One-Time Award</u>

6.8.1.  Dr. Alford erroneously added a tax adjustment and, if the court were to give Plaintiff this tax adjustment, Alford used an incorrect and biased amount.

6.8.2.  Dr. Alford's tax calculation for a one-time award cannot be reliably utilized when damages are in dispute. He uses a marginal income tax rate of 43% compared to his estimate of Taylor's normal income tax rate of 30% to claim additional damages of $203,185.

The highest Federal tax rate (filing as a single person) in 2019 is 37% for taxable income (not gross income) over $510,300, 35% for taxable income over $204,100, 32% for taxable income over $160,725, and 24% for taxable income over $84,200.

Dr. Alford has used various rates to tax affect his calculations: 33%, 32%, and 24%. For the income tax rate differential caused by a one-time spike in taxable income, he has used 30% and 43%. This makes it impossible to apply.

If the court were to award damages for the one-time income tax differential, I recommend the following:

| Damages amount | Estimated Federal Tax Rate / Plaintiff's Marginal Tax Rate | Additional Damages for Tax Rate Differential[36] |
|---|---|---|
| From $1 to $100,000 | 32%/24% | 8% |
| Above $100,000 | 35%/24% | 11% |

This approach assumes Ms. Taylor's taxable income, but for a one-time damages award, is around $84,000 and her marginal Federal income tax rate is 24%. This approach is simpler and more flexible for the purpose at hand.

---

[35] Amounts herein might differ from Alford's report by rounding.

[36] For example, add $8,000 to a $100,000 award ($100,000 x 8%), add $19,000 to a $200,000 award ($8,000 plus $100,000 x 11%), and so on.

6.9. <u>Summary of errors in Alford's calculation of damages.</u>

6.9.1. Accounting for the non-recovery of the foreign earned income tax gross up, meals, incidentals, and lodging, the salary uplift, and Ms. Taylor's failure to mitigate, Dr. Alford's calculations should be reduced as follows:

| Re-Calculation of Alford's Damages – Summary[37] | Periods | Damages: W-2 Comp Only | Damages: Meals & lodging | Damages: Foreign Inc Excl | Damages: Total |
|---|---|---|---|---|---|
| Alford's damages calculations $ | 01 Oct 2014 through 30 Jun 2021 | 952,132 | 208,259 | 169,526 | 1,329,917 |
| Reduction of "Gross comp without transfer to States" for failure to mitigate | 01 Oct 2014 through 12 Mar 2016 | - 234,167 | - 44,378 | - 36,454 | - 315,000 |
| less: salary uplift | 13 Mar 2016 through 30 June 2021 | - 254,738 | -- | -- | - 254,738 |
| less: meals and incidentals and lodging | 13 Mar 2016 through | -- | - 163,881 | | - 296,952 |
| less: income tax on foreign income exclusion | 30 June 2021 | | | - 133,072 | |
| **Re-calculated damages (Alford) $** | 13 Mar 2016 through 30 June 2021 | **463,227** | **--** | **--** | **463,227** |

6.10. <u>Failure to account for uncertainty of mobilization through June 2021.</u>

6.10.1. Apart from a mandate of law, or a finding in a legal proceeding, it is unreasonable and unreliable to calculate damages on the assumption that Plaintiff's continuing mobilization was predestined to 100% certainty. In evaluating probabilities for Plaintiff's continuing demobilization, the only thing mortals may say with 100% certainty is that Plaintiff's mobilization to Afghanistan was destined to end.

Everyone makes decisions using probabilities, often without awareness of this element of the decision-making process. Financial professionals and others utilize shorthand methods of measuring and factoring probabilities, and I will apply some shorthand methods to Dr. Alford's calculations. Shorthand approaches used in financial applications often are sufficiently accurate, although shorthand estimates cannot claim high precision.

6.10.2. Dr. Alford failed to recognize any method or practice for measuring an individual's lost wages from wrongful termination. Probability measurement for such damages is a generally accepted practice.

"When calculating lost earnings in wrongful employment termination cases, economists should approximate the amount of time a terminated employee would have remained employed for the defendant employer accounting for the probabilities of surviving, participating in the labor force, and being employed. The economists should also account for the probability that a terminated worker would have remained employed for that particular employer absent the termination. This is because even when accounting for the

---

[37] Amounts herein might differ from Alford's report by rounding.

probability of surviving, the probability of participating in the labor force, and the probability of being employed, a worker may leave a particular employer, either voluntarily, such as for a better job elsewhere, or involuntarily, such as for getting fired with cause at a later date or laid off."[38]

6.10.3. Dr. Alford calculated the full amount of lost earnings and benefits claimed by Ms. Taylor without recognition of the high probability of termination or resignation from her specific job assignment for reasons exogenous to factors in this case. At the time of Taylor's mobilization, Ms. Taylor's employer, Fluor, was far into a continuing workforce reduction phase of its LOGCAP contract. Failing to use this generally accepted practice renders Dr. Alford's overall damages calculation as speculative, biased, and unreliable.

6.10.4. Equally weighted outcomes

One practical method for estimating probability-weighted outcomes is to identify the main paths and outcomes and assign an equal probability to each path or outcome. A distinguishing feature of this approach is that every outcome has an equal chance of reflecting the reality that could have been had Plaintiff continued her job position during mobilization.

I have applied this shorthand method to Dr. Alford's calculations. I have disaggregated the period from October 2014 through June 2021 into 27 quarterly periods, each path one quarterly period greater than the preceding one, giving 28 possible outcomes (adding a "zero" outcome) through June 2021. I estimated Plaintiff's putative damages for each quarterly period, each quarterly period having three months to accumulate more compensation than the preceding quarter. This approach implies that demobilization occurs at the end of a given quarterly period and there are no further earnings from the Plaintiff's job in Afghanistan.

This adjustment to Dr. Alford's damages calculations are presented in Exhibit 8 – Probability Tables. This probability-weighted approach gives **$490,560**,[39] assuming the jury finds all categories of Plaintiff's compensation are recoverable as damages and does not adjust for Plaintiff's failure to mitigate her damages through 12 March 2016 through June 2021. The results approximate cumulative damages assuming Plaintiff's continuing mobilization in Afghanistan through December 2016.

6.10.5. Weighted by the number of outcomes

Another practical method for estimating probability-weighted outcomes is to identify the main paths and outcomes, as above, but assign differing weights (i.e., not equal, as above) to each path creating more outcomes (406). As above, I used the disaggregated data described above. Then I multiplied each outcome by the number of paths, reducing each succeeding path by one. A distinguishing feature of this approach is that outcomes soon after September 2014 are weighted more heavily and outcomes closer to June 2021 are weighted more lightly.

I have applied this shorthand method to Dr. Alford's calculations. Using Plaintiff's estimated quarterly earnings (see above), each quarterly period having three months to more accumulate damages than the

---

[38] "*Employee Tenure and Economic Losses in Wrongful Termination Cases*," by Charles L, Baum, III, PhD, Journal of Forensic Economics 24(1), 2013, pp. 41-66.

[39] This amount is reduced to **$464,377** if the jury finds the Plaintiff failed to mitigate her damages through 12 March 2016.

preceding quarter. This approach implies that at the end of a given quarterly period, demobilization occurs and there are no further earnings from the Plaintiff's job in Afghanistan.

This adjustment to Dr. Alford's damages calculations are presented in Exhibit 8 – Probability Tables. This probability-weighted approach gives **$334,973**,[40] assuming the jury finds all categories of Plaintiff's compensation are recoverable as damages and does not adjust for Plaintiff's failure to mitigate her damages through 12 March 2016 through June 2021. The results approximate cumulative damages assuming Plaintiff's continuing mobilization in Afghanistan through December 2017.

I respectfully reserve the right to update my report.

**Respectfully submitted,**

**James F. Joyner III, CPA, CVA/ABV, CPC, CRM, CPVA**

**15 December 2019**

---

[40] This amount is reduced to **$292,068** if the jury finds the Plaintiff failed to mitigate her damages through 12 March 2016.

EXHIBIT 1 – GENERAL ASSUMPTIONS

| Taylor v Fluor et al | days | 92 | 90 | 91 | 92 | 92 | 91 | 91 | 92 | 92 |
|---|---|---|---|---|---|---|---|---|---|---|
| Civil Action No. 6:17-cv-01875-BHH-KFM | days/yr | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 |
| **General Assumptions** | | **Dec-14** | **Mar-15** | **Jun-15** | **Sep-15** | **Dec-15** | **Mar-16** | **Jun-16** | **Sep-16** | **Dec-16** |
| Alford's projected **base pay** assuming continued deployment | | 21,398 | 21,715 | 21,956 | 22,198 | 22,198 | 22,083 | 22,083 | 22,325 | 22,325 |
| Alford's projected **OT pay** assuming continued deployment | | 21,727 | 22,049 | 22,294 | 22,539 | 22,539 | 22,422 | 22,422 | 22,669 | 22,669 |
| Alford's projected **uplift pay** assuming continued deployment | | 15,802 | 16,035 | 16,213 | 16,391 | 16,391 | 16,307 | 16,307 | 16,486 | 16,486 |
| Alford's projected **other pay** assuming continued deployment | | 3,750 | 2,219 | 2,244 | 2,268 | 2,268 | 2,735 | 2,735 | 2,765 | 2,765 |
| Alford's projected **total pay** assuming continued deployment | | 62,677 | 62,018 | 62,707 | 63,397 | 63,397 | 63,547 | 63,547 | 64,245 | 64,245 |
| Alford's projected **for inc excl benefit** assuming continued deployment | | - | 7,505 | 7,588 | 7,672 | 7,672 | 7,605 | 7,605 | 7,689 | 7,689 |
| Alford's projected **Gross Comp** assuming continued deployment | | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 |
| Alford's projected **total damages** assuming continued deployment | | 45,450 | 53,013 | 53,583 | 54,154 | 54,154 | 56,603 | 56,603 | 57,183 | 57,183 |
| **Months** between reported M&A counts | | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Assumed **weeks** | | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 |
| **Projected Qtr W-2 pay ASSUMING cont'd mobilization (Joyner)** | | **62,677** | **62,018** | **62,707** | **63,397** | **63,397** | **63,547** | **63,547** | **64,245** | **64,245** |
| | | | | | | | | | | |
| **M&A count week (see graph and table)** | **3,805** | **1,043** | **941** | **894** | **833** | **687** | **652** | **640** | **623** | **584** |
| **Changes in mobilization after 2014 Q3** | | -72.59% | -75.27% | -76.50% | -78.11% | -81.94% | -82.86% | -83.18% | -83.63% | -84.65% |
| **Probability of continued mobilization after Sep 2014** | | **27.41%** | **24.73%** | **23.50%** | **21.89%** | **18.06%** | **17.14%** | **16.82%** | **16.37%** | **15.35%** |

| Taylor v Fluor et al | days | 90 | 91 | 92 | 92 | 90 | 91 | 92 | 92 | 90 |
|---|---|---|---|---|---|---|---|---|---|---|
| Civil Action No. 6:17-cv-01875-BHH-KFM | days/yr | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 |
| **General Assumptions** | | **Mar-17** | **Jun-17** | **Sep-17** | **Dec-17** | **Mar-18** | **Jun-18** | **Sep-18** | **Dec-18** | **Mar-19** |
| Alford's projected **base pay** assuming continued deployment | | 22,505 | 22,755 | 23,005 | 23,005 | 23,100 | 23,357 | 23,613 | 23,613 | 23,515 |
| Alford's projected **OT pay** assuming continued deployment | | 23,328 | 23,587 | 23,846 | 23,846 | 23,944 | 24,210 | 24,476 | 24,476 | 24,375 |
| Alford's projected **uplift pay** assuming continued deployment | | 12,203 | 12,338 | 12,474 | 12,474 | 11,971 | 12,104 | 12,237 | 12,237 | 10,061 |
| Alford's projected **other pay** assuming continued deployment | | 3,205 | 3,241 | 3,277 | 3,277 | 2,404 | 2,431 | 2,458 | 2,458 | 1,233 |
| Alford's projected **total pay** assuming continued deployment | | 61,241 | 61,921 | 62,602 | 62,602 | 61,419 | 62,101 | 62,784 | 62,784 | 59,184 |
| Alford's projected **for inc excl benefit** assuming continued deployment | | 7,602 | 7,686 | 7,771 | 7,771 | 7,516 | 7,599 | 7,683 | 7,683 | 5,734 |
| Alford's projected **Gross Comp** assuming continued deployment | | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 | 35,601 | 36,084 | 36,084 | 27,084 |
| Alford's projected **total damages** assuming continued deployment | | 53,624 | 54,188 | 54,853 | 54,853 | 51,870 | 52,438 | 53,105 | 53,105 | 40,890 |
| **Months** between reported M&A counts | | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Assumed **weeks** | | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 |
| **Projected Qtr W-2 pay ASSUMING cont'd mobilization (Joyner)** | | **61,241** | **61,921** | **62,602** | **62,602** | **61,419** | **62,101** | **62,784** | **62,784** | **59,184** |
| | | | | | | | | | | |
| **M&A count week (see graph and table)** | **3,805** | **663** | **663** | **715** | **711** | **724** | **708** | **740** | **745** | **748** |
| **Changes in mobilization after 2014 Q3** | | -82.58% | -82.58% | -81.21% | -81.31% | -80.97% | -81.39% | -80.55% | -80.42% | -80.34% |
| **Probability of continued mobilization after Sep 2014** | | **17.42%** | **17.42%** | **18.79%** | **18.69%** | **19.03%** | **18.61%** | **19.45%** | **19.58%** | **19.66%** |

EXHIBIT 1 – GENERAL ASSUMPTIONS (CONTINUED)

| | | Jun-19 | Sep-19 | Dec-19 | Mar-20 | Jun-20 | Sep-20 | Dec-20 | Mar-21 | Jun-21 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Taylor v Fluor et al** | days | 91 | 92 | 92 | 91 | 91 | 92 | 92 | 90 | 91 | 3,378 | 9.25 |
| **Civil Action No. 6:17-cv-01875-BHH-KFM** | days/yr | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | | 9.25 |
| **General Assumptions** | | **Jun-19** | **Sep-19** | **Dec-19** | **Mar-20** | **Jun-20** | **Sep-20** | **Dec-20** | **Mar-21** | **Jun-21** | **TOTAL** | |
| Alford's projected **base pay** assuming continued deployment | | 23,777 | 24,038 | 24,038 | 24,327 | 24,327 | 24,594 | 24,594 | 24,956 | 25,234 | 626,635 | |
| Alford's projected **OT pay** assuming continued deployment | | 24,646 | 24,916 | 24,916 | 25,216 | 25,216 | 25,493 | 25,493 | 26,396 | 26,690 | 646,400 | |
| Alford's projected **uplift pay** assuming continued deployment | | 10,173 | 10,284 | 10,284 | 10,317 | 10,317 | 10,430 | 10,430 | 10,800 | 10,920 | 348,472 | |
| Alford's projected **other pay** assuming continued deployment | | 1,247 | 1,260 | 1,260 | 1,243 | 1,243 | 1,257 | 1,257 | 1,243 | 1,257 | 59,000 | |
| Alford's projected **total pay** assuming continued deployment | | 59,841 | 60,499 | 60,499 | 61,103 | 61,103 | 61,774 | 61,774 | 63,396 | 64,100 | 1,680,507 | |
| Alford's projected **for inc excl benefit** assuming continued deployment | | 5,798 | 5,862 | 5,862 | 5,951 | 5,951 | 6,017 | 6,017 | - | - | 169,526 | |
| Alford's projected **Gross Comp** assuming continued deployment | | 27,441 | 27,699 | 27,699 | 28,503 | 28,303 | 28,374 | 28,174 | 30,296 | 30,500 | 923,907 | |
| Alford's projected **total damages** assuming continued deployment | | 41,401 | 41,812 | 41,812 | 42,577 | 42,377 | 42,603 | 42,403 | 38,147 | 38,438 | 1,328,421 | |
| **Months** between reported M&A counts | | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **81** | |
| Assumed **weeks** | | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | **352** | |
| **Projected Qtr W-2 pay ASSUMING cont'd mobilization (Joyner)** | | **59,841** | **60,499** | **60,499** | **61,103** | **61,103** | **61,774** | **61,774** | **63,396** | **64,100** | **$1,680,507** | |
| | | | | | | | | | | | | |
| **M&A count week (see graph and table)** | 3,805 | **659** | **610** | **610** | **610** | **610** | **610** | **610** | **610** | **610** | **714** | av |
| **Changes in mobilization after 2014 Q3** | | -82.68% | -83.97% | -83.97% | -83.97% | -83.97% | -83.97% | -83.97% | -83.97% | -83.97% | **-37.78%** | av |
| **Probability of continued mobilization after Sep 2014** | | **17.32%** | **16.03%** | **16.03%** | **16.03%** | **16.03%** | **16.03%** | **16.03%** | **16.03%** | **16.03%** | **62.22%** | av |

## EXHIBIT 2 – CALCULATED MOBILIZATION EARNINGS COMPARED TO DEMOBILIZATION EARNINGS

| Taylor v Fluor et al<br>Civil Action No. 6:17-cv-01875-BHH-KFM | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Taylor's Qtr Earnings - Actual and Forecast (Joyner)** | | **Dec-14** | **Mar-15** | **Jun-15** | **Sep-15** | **Dec-15** | **Mar-16** | **Jun-16** | **Sep-16** | **Dec-16** |
| Taylor's W-2 Wages (actual to 2019; forecasted after 2019) | | 102,743 | 102,743 | 102,743 | 102,743 | 102,743 | 94,277 | 94,277 | 94,277 | 94,277 |
| a-actual or f-forecast | | a | a | a | a | a | a | a | a | a |
| Forecasted annual wage incr (Emp Cost Index BLS Table 4) | | 2.24% | 2.40% | 1.89% | 1.87% | 2.03% | 2.02% | 2.01% | 2.00% | 1.91% |
| Employ Cost Index - T4 current qtr - Manage and pro | | 123.200 | 123.900 | 124.300 | 125.200 | 125.700 | 126.400 | 126.800 | 127.700 | 128.100 |
| Taylor's qtr W-2 comp - Actual or forecast | | 25,900 | 25,300 | 25,600 | 25,900 | 25,900 | 23,500 | 23,500 | 23,800 | 23,800 |
| 401k matching 0% | 0.0% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Taylor's actual quarterly earnings after demobilization | | 25,900 | 25,300 | 25,600 | 25,900 | 25,900 | 23,500 | 23,500 | 23,800 | 23,800 |
| Taylor's base and OT pay assuming continued mobilization | | 43,125 | 43,764 | 44,251 | 44,737 | 44,737 | 44,505 | 44,505 | 44,994 | 44,994 |
| **Diff base and OT pay - Continued mobilization vs post-demobilization** | | **17,225** | **18,464** | **18,651** | **18,837** | **18,837** | **21,005** | **21,005** | **21,194** | **21,194** |
| Probability of continued mobilization after September 2014 | | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | 16.82% | 16.37% | 15.35% |
| **Probability-weighted earnings difference (Joyner)** | | **4,700** | **4,600** | **4,400** | **4,100** | **3,400** | **3,600** | **3,500** | **3,500** | **3,300** |
| | | | | | | | | | | |
| **Taylor's projected uplift pay assuming continued mobilization** | | **15,802** | **16,035** | **16,213** | **16,391** | **16,391** | **16,307** | **16,307** | **16,486** | **16,486** |
| Probability of continued mobilization after September 2014 | | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | 16.82% | 16.37% | 15.35% |
| **Probability-weighted earnings difference (Joyner)** | | **4,300** | **4,000** | **3,800** | **3,600** | **3,000** | **2,800** | **2,700** | **2,700** | **2,500** |
| | | | | | | | | | | |
| **Taylor's projected other pay assuming continued mobilization** | | **3,750** | **2,219** | **2,244** | **2,268** | **2,268** | **2,735** | **2,735** | **2,765** | **2,765** |
| Probability of continued mobilization after September 2014 | | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | 16.82% | 16.37% | 15.35% |
| **Probability-weighted earnings difference (Joyner)** | | **1,000** | **500** | **500** | **500** | **400** | **500** | **500** | **500** | **400** |
| | | | | | | | | | | |
| **Taylor's projected excess earnings assuming continued mobilization** | | **36,777** | **36,718** | **37,107** | **37,497** | **37,497** | **40,047** | **40,047** | **40,445** | **40,445** |
| Probability of continued mobilization after September 2014 | | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | 16.82% | 16.37% | 15.35% |
| **Probability-weighted earnings difference (Joyner)** | | **10,100** | **9,100** | **8,700** | **8,200** | **6,800** | **6,900** | **6,700** | **6,600** | **6,200** |

**Taylor v Fluor et al**

**Civil Action No. 6:17-cv-01875-BHH-KFM**

| Taylor's Qtr Earnings - Actual and Forecast (Joyner) | | Mar-17 | Jun-17 | Sep-17 | Dec-17 | Mar-18 | Jun-18 | Sep-18 | Dec-18 | Mar-19 |
|---|---|---|---|---|---|---|---|---|---|---|
| Taylor's W-2 Wages (actual to 2019; forecasted after 2019) | | 98,113 | 98,113 | 98,113 | 98,113 | 106,100 | 106,100 | 106,100 | 106,100 | 130,000 |
| a-actual or f-forecast | | a | a | a | a | a | a | a | a | a |
| Forecasted annual wage incr (Emp Cost Index BLS Table 4) | | 2.14% | 2.44% | 2.35% | 2.42% | 2.40% | 2.31% | 2.45% | 2.52% | 2.42% |
| Employ Cost Index - T4 current qtr - Manage and pro | | 129.100 | 129.900 | 130.700 | 131.200 | 132.200 | 132.900 | 133.900 | 134.500 | 135.400 |
| Taylor's qtr W-2 comp - Actual or forecast | | 24,200 | 24,500 | 24,700 | 24,700 | 26,200 | 26,500 | 26,700 | 26,700 | 32,100 |
| 401k matching 0% | 0.0% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Taylor's actual quarterly earnings after demobilization | | 24,200 | 24,500 | 24,700 | 24,700 | 26,200 | 26,500 | 26,700 | 26,700 | 32,100 |
| Taylor's base and OT pay assuming continued mobilization | | 45,832 | 46,342 | 46,851 | 46,851 | 47,044 | 47,567 | 48,089 | 48,089 | 47,890 |
| **Diff base and OT pay - Continued mobilization vs post-demobilization** | | **21,632** | **21,842** | **22,151** | **22,151** | **20,844** | **21,067** | **21,389** | **21,389** | **15,790** |
| Probability of continued mobilization after September 2014 | | 17.42% | 17.42% | 18.79% | 18.69% | 19.03% | 18.61% | 19.45% | 19.58% | 19.66% |
| **Probability-weighted earnings difference (Joyner)** | | **3,800** | **3,800** | **4,200** | **4,100** | **4,000** | **3,900** | **4,200** | **4,200** | **3,100** |
| **Taylor's projected uplift pay assuming continued mobilization** | | **12,203** | **12,338** | **12,474** | **12,474** | **11,971** | **12,104** | **12,237** | **12,237** | **10,061** |
| Probability of continued mobilization after September 2014 | | 17.42% | 17.42% | 18.79% | 18.69% | 19.03% | 18.61% | 19.45% | 19.58% | 19.66% |
| **Probability-weighted earnings difference (Joyner)** | | **2,100** | **2,100** | **2,300** | **2,300** | **2,300** | **2,300** | **2,400** | **2,400** | **2,000** |
| **Taylor's projected other pay assuming continued mobilization** | | **3,205** | **3,241** | **3,277** | **3,277** | **2,404** | **2,431** | **2,458** | **2,458** | **1,233** |
| Probability of continued mobilization after September 2014 | | 17.42% | 17.42% | 18.79% | 18.69% | 19.03% | 18.61% | 19.45% | 19.58% | 19.66% |
| **Probability-weighted earnings difference (Joyner)** | | **600** | **600** | **600** | **600** | **500** | **500** | **500** | **500** | **200** |
| **Taylor's projected excess earnings assuming continued mobilization** | | **37,041** | **37,421** | **37,902** | **37,902** | **35,219** | **35,601** | **36,084** | **36,084** | **27,084** |
| Probability of continued mobilization after September 2014 | | 17.42% | 17.42% | 18.79% | 18.69% | 19.03% | 18.61% | 19.45% | 19.58% | 19.66% |
| **Probability-weighted earnings difference (Joyner)** | | **6,500** | **6,500** | **7,100** | **7,100** | **6,700** | **6,600** | **7,000** | **7,100** | **5,300** |

**Taylor v Fluor et al**
**Civil Action No. 6:17-cv-01875-BHH-KFM**

| Taylor's Qtr Earnings - Actual and Forecast (Joyner) | | Jun-19 | Sep-19 | Dec-19 | Mar-20 | Jun-20 | Sep-20 | Dec-20 | Mar-21 | Jun-21 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Taylor's W-2 Wages (actual to 2019; forecasted after 2019) | | 130,000 | 130,000 | 130,000 | 130,800 | 131,700 | 132,500 | 133,300 | 134,100 | 134,900 | |
| a-actual or f-forecast | | a | a | a | f | f | f | f | f | f | |
| Forecasted annual wage incr (Emp Cost Index BLS Table 4) | | 2.48% | 2.54% | 2.63% | 2.60% | 2.65% | 2.47% | 2.56% | 2.55% | 2.53% | 16.64% |
| Employ Cost Index - T4 current qtr - Manage and pro | | 136.200 | 137.300 | 138.039 | 138.924 | 139.809 | 140.694 | 141.579 | 142.464 | 143.348 | 143.348 |
| Taylor's qtr W-2 comp - Actual or forecast | | 32,400 | 32,800 | 32,800 | 32,600 | 32,800 | 33,400 | 33,600 | 33,100 | 33,600 | $756,600 |
| 401k matching 0% | 0.0% | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $- |
| Taylor's actual quarterly earnings after demobilization | | 32,400 | 32,800 | 32,800 | 32,600 | 32,800 | 33,400 | 33,600 | 33,100 | 33,600 | $756,600 |
| Taylor's base and OT pay assuming continued mobilization | | 48,422 | 48,954 | 48,954 | 49,543 | 49,543 | 50,087 | 50,087 | 51,353 | 51,923 | $1,273,035 |
| **Diff base and OT pay - Continued mobilization vs post-demobilization** | | **16,022** | **16,154** | **16,154** | **16,943** | **16,743** | **16,687** | **16,487** | **18,253** | **18,323** | **$516,435** |
| Probability of continued mobilization after September 2014 | | 17.32% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | |
| **Probability-weighted earnings difference (Joyner)** | | **2,800** | **2,600** | **2,600** | **2,700** | **2,700** | **2,700** | **2,600** | **2,900** | **2,900** | **$94,900** |
| **Taylor's projected uplift pay assuming continued mobilization** | | **10,173** | **10,284** | **10,284** | **10,317** | **10,317** | **10,430** | **10,430** | **10,800** | **10,920** | **$348,472** |
| Probability of continued mobilization after September 2014 | | 17.32% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | |
| **Probability-weighted earnings difference (Joyner)** | | **1,800** | **1,600** | **1,600** | **1,700** | **1,700** | **1,700** | **1,700** | **1,700** | **1,800** | **$64,900** |
| **Taylor's projected other pay assuming continued mobilization** | | **1,247** | **1,260** | **1,260** | **1,243** | **1,243** | **1,257** | **1,257** | **1,243** | **1,257** | **$59,000** |
| Probability of continued mobilization after September 2014 | | 17.32% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | |
| **Probability-weighted earnings difference (Joyner)** | | **200** | **200** | **200** | **200** | **200** | **200** | **200** | **200** | **200** | **$11,200** |
| **Taylor's projected excess earnings assuming continued mobilization** | | **27,441** | **27,699** | **27,699** | **28,503** | **28,303** | **28,374** | **28,174** | **30,296** | **30,500** | **$923,907** |
| Probability of continued mobilization after September 2014 | | 17.32% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | 16.03% | |
| **Probability-weighted earnings difference (Joyner)** | | **4,800** | **4,400** | **4,400** | **4,600** | **4,500** | **4,500** | **4,500** | **4,900** | **4,900** | **$170,700** |

EXHIBIT 3 – ESTIMATE OF EARNINGS BEFORE TAYLOR'S ATTEMPT TO MITIGATE

| Taylor v Fluor et al<br>Civil Action No. 6:17-cv-01875-BHH-KFM | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Adjustment for Failure to Mitigate through 12 Mar 2016 (Joyner)** | **Dec-14** | **Mar-15** | **Jun-15** | **Sep-15** | **Dec-15** | **Mar-16** | **TOTAL** |
| Days through 12 March 2016 | 92 | 90 | 91 | 92 | 92 | 72 | |
| Alford's projected **base and OT pay** assuming continued deployment | 17,225 | 18,464 | 18,651 | 18,837 | 18,837 | 16,620 | $108,634 |
| Probability of continued mobilization after 2014 Q3 | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | |
| **Probability-weighted base and OT pay differ through 12 Mar 2012 (Joyner)** | **4,700** | **4,600** | **4,400** | **4,100** | **3,400** | **2,800** | **$24,000** |
| Alford's projected **uplift pay** assuming continued deployment | 15,802 | 16,035 | 16,213 | 16,391 | 16,391 | 12,900 | $93,732 |
| Probability of continued mobilization after 2014 Q3 | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | |
| **Probability-weighted uplift pay differ through 12 Mar 2012 (Joyner)** | **4,300** | **4,000** | **3,800** | **3,600** | **3,000** | **2,200** | **$20,900** |
| Alford's projected **other pay** assuming continued deployment | 3,750 | 2,219 | 2,244 | 2,268 | 2,268 | 2,160 | $14,910 |
| Probability of continued mobilization after 2014 Q3 | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | |
| **Probability-weighted other pay differ through 12 Mar 2012 (Joyner)** | **1,000** | **500** | **500** | **500** | **400** | **400** | **$3,300** |
| Alford's projected **total pay** assuming continued deployment | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 31,680 | $217,276 |
| Probability of continued mobilization after 2014 Q3 | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | |
| **Probability-weighted total pay differ through 12 Mar 2012 (Joyner)** | **10,100** | **9,100** | **8,700** | **8,200** | **6,800** | **5,400** | **$48,300** |
| Alford's projected **tax benefit** assuming continued deployment | 56,329 | 54,972 | 55,564 | 56,156 | 56,156 | 46,740 | $325,918 |
| Probability of continued mobilization after 2014 Q3 | 27.41% | 24.73% | 23.50% | 21.89% | 18.06% | 17.14% | |
| **Probability-weighted tax benefit through 12 Mar 2012 (Joyner)** | **15,400** | **13,600** | **13,100** | **12,300** | **10,100** | **8,000** | **$72,500** |

**EXHIBIT 4 – M&A VS TOTAL PERSONNEL**



**M&A vs. Total Personnel**
**Feb 2012 - Sep 2019**

| | Feb-12 | Jun-12 | Sep-12 | Dec-12 | Mar-13 | Jun-13 | Sep-13 | Dec-13 | Mar-14 | Jun-14 | Sep-14 | Dec-14 | Mar-15 | Jun-15 | Sep-15 | Dec-15 | Mar-16 | Jun-16 | Sep-16 | Dec-16 | Mar-17 | Jun-17 | Sep-17 | Dec-17 | Mar-18 | Jun-18 | Sep-18 | Dec-18 | Mar-19 | Jun-19 | Sep-19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FOB | 67 | 64 | 61 | 50 | 44 | 29 | 27 | 23 | 21 | 18 | 14 | 11 | 10 | 9 | 9 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| M&A | 3,805 | 3,354 | 3,091 | 3,213 | 2,630 | 2,290 | 2,002 | 1,837 | 1,480 | 1,344 | 1,148 | 1,043 | 941 | 894 | 833 | 687 | 652 | 640 | 623 | 584 | 663 | 663 | 715 | 711 | 724 | 708 | 740 | 745 | 748 | 659 | 610 |
| Total Personnel | 25,757 | 25,308 | 24,106 | 24,137 | 21,406 | 17,943 | 15,782 | 14,761 | 13,110 | 11,800 | 10,001 | 8,801 | 7,859 | 7,553 | 7,128 | 6,638 | 6,470 | 6,306 | 6,530 | 5,131 | 6,171 | 6,136 | 6,158 | 6,296 | 6,402 | 6,554 | 6,513 | 6,437 | 6,393 | 4,959 | 4,868 |

# EXHIBIT 5 – SUMMARY OF FORM W-2 FOR TARA D. TAYLOR

**Taylor v. Fluor et al**
**Civil Action No. 6:17-cv-01875-BHH-KFM**
**Analysis of Earnings**
**from Taylor's Form W-2**

| | 2012 | 2013 | 2014 a | 2014 b | 2014 Total | 2015 a | 2015 b | 2015 Total | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Medicare wages | 225,389.58 | 235,708.76 | 218,456.54 | 13,168.00 | 231,624.54 | 24,956.00 | 77,787.24 | 102,743.24 | 94,276.64 | 98,113.15 | 106,099.92 | 130,000.00 |
| FICA-OASDI withholding | 4,624.20 | 7,049.40 | 7,254.00 | 816.42 | 8,070.42 | 1,547.27 | 4,822.70 | 6,369.97 | 5,845.09 | 6,083.09 | 6,578.40 | |
| FICA-HI withholding | 3,268.15 | 3,739.16 | 333.72 | 190.94 | 524.66 | 361.86 | 1,127.76 | 1,489.62 | 1,366.86 | 1,422.71 | 1,538.66 | |
| Federal tax withholding | 27,325.90 | 14,634.75 | 15,755.82 | 1,492.45 | 17,248.27 | 2,855.75 | 10,282.78 | 13,138.53 | 11,280.01 | 12,092.75 | 11,482.20 | |
| Georgia tax withholding | 12,491.58 | 13,032.85 | 11,230.81 | 806.48 | 12,037.29 | - | - | - | - | - | | |
| Deferrals to 401k plan | 11,728.64 | 13,028.52 | 10,476.90 | 987.60 | 11,464.50 | 1,247.80 | 1,983.96 | 3,231.76 | 2,850.16 | 2,969.92 | 3,207.28 | |
| Other deferrals | 3,714.36 | 1,928.16 | 3,551.00 | - | 3,551.00 | | | | | | | |

**EXHIBIT 6 – SUMMARY CALCULATION OF TARA D. TAYLOR'S TIME OFF DURING MOBILIZATION**

| R&R # | Dates | Length | 4 Travel Days Removed | | | |
|---|---|---|---|---|---|---|
| Demobilze | 24-Sep-14 | | | | Total Days Represented | 1057 |
| 10 | 20-Jul-14 | 10 | 6 | | | |
| | 10-Jul-14 | | | | | |
| 9 | 19-Mar-14 | 11 | 7 | | R&R days | 110 |
| | 8-Mar-14 | | | | | |
| 8 | 13-Dec-13 | 18 | 14 | | | |
| | 25-Nov-13 | | | | Avg Percentage of Time on Vacation | 10.41% |
| 7 | 23-Sep-13 | 8 | 4 | | | |
| | 15-Sep-13 | | | | | |
| 6 | 31-Jul-13 | 19 | 15 | | Avg. Weeks Worked Per Year | 46.6 |
| | 12-Jul-13 | | | | | |
| 5 | 3-May-13 | 13 | 9 | | | |
| | 20-Apr-13 | | | | | |
| 4 | 28-Feb-13 | 16 | 12 | | | |
| | 12-Feb-13 | | | | | |
| 3 | 22-Dec-12 | 10 | 6 | | | |
| | 12-Dec-12 | | | | | |
| 2 | 16-Oct-12 | 22 | 18 | | | |
| | 24-Sep-12 | | | | | |
| 1 | 17-Apr-12 | 23 | 19 | | | |
| | 25-Mar-12 | | | | | |
| Mobilize | 2-Nov-11 | | | | | |

# EXHIBIT 7 – SUMMARY ALFORD'S DAMAGES CALCULATIONS

| Begin Date | End Date | Days | Base Pay | Overtime | Taylor's Post demob Earnings | Net | Site Adders "Uplift" | Other Payments | Alford's Gross Comp | Discount | Alford's Gross Comp after Discount | Tax Benefits from Foreign Inc Excl | Alford's Lost Gross Compensation | Alford's Meals & Lodging | Alford's Damages no match | Alford's 401k Match Damages | Alford's Total Damages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Alford's Damages as Reported** | | | | | | | | | | | | | | | | | |
| 01-Oct-2014 | 31-Dec-2014 | 92 | 21,398 | 21,727 | (21,398) | 21,727 | 15,802 | 3,750 | 41,279 | - | 41,279 | - | 41,279 | 7,435 | 48,714 | 1,238 | 49,952 |
| 01-Jan-2015 | 31-Dec-2015 | 365 | 88,067 | 89,422 | (90,813) | 86,676 | 65,030 | 9,000 | 160,706 | - | 160,706 | 30,437 | 191,143 | 30,827 | 221,970 | 4,821 | 226,791 |
| 01-Jan-2016 | 31-Dec-2016 | 366 | 88,816 | 90,182 | (91,999) | 86,999 | 65,587 | 11,000 | 163,586 | - | 163,586 | 30,588 | 194,174 | 31,092 | 225,266 | 4,908 | 230,174 |
| 01-Jan-2017 | 31-Dec-2017 | 365 | 91,270 | 94,606 | (99,257) | 86,619 | 49,489 | 13,000 | 149,108 | - | 149,108 | 30,829 | 179,937 | 31,951 | 211,888 | 4,473 | 216,361 |
| 01-Jan-2018 | 31-Dec-2018 | 365 | 93,683 | 97,106 | (91,271) | 99,518 | 48,549 | 9,750 | 157,817 | - | 157,817 | 30,480 | 188,297 | 32,315 | 220,612 | 4,735 | 225,347 |
| 01-Jan-2019 | 31-Dec-2019 | 365 | 95,368 | 98,853 | (130,000) | 64,221 | 40,802 | 5,000 | 110,023 | - | 110,023 | 23,256 | 133,279 | 29,434 | 162,713 | 3,301 | 166,014 |
| 01-Jan-2020 | 31-Dec-2020 | 366 | 97,843 | 101,418 | (133,380) | 65,881 | 41,493 | 5,000 | 112,374 | (694) | 111,680 | 23,936 | 135,616 | 30,013 | 165,629 | 3,350 | 168,979 |
| 01-Jan-2021 | 30-Jun-2021 | 181 | 50,190 | 53,086 | (68,424) | 34,852 | 21,720 | 2,500 | 59,072 | (1,141) | 57,931 | - | 57,931 | 15,192 | 73,123 | 1,738 | 74,861 |
| **Alford's Damages** | | | **626,635** | **646,400** | **(726,542)** | **546,493** | **348,472** | **59,000** | **953,965** | **(1,835)** | **952,130** | **169,526** | **1,121,656** | **208,259** | **1,329,915** | **28,564** | **1,358,479** |
| One Time Tax  Tax Rate Adjustment | | | | | | | | | | | | | | | | | **202,992** |
| **Alford's  Calculation of Total Loss** | | | | | | | | | | | | | | | **1,329,915** | | **1,561,471** |
| **Adjustment for  failure to mitigate:** | | | | | | | | | | | | | | | | | |
| 01-Oct-2014 | 31-Dec-2014 | 92 | (21,398) | (21,727) | 21,398 | (21,727) | (15,802) | (3,750) | (41,279) | - | (41,279) | - | (41,279) | (7,435) | (48,714) | (1,238) | (49,952) |
| 01-Jan-2015 | 31-Dec-2015 | 365 | (88,067) | (89,422) | 90,813 | (86,676) | (65,030) | (9,000) | (160,706) | - | (160,706) | (30,437) | (191,143) | (30,827) | (221,970) | (4,821) | (226,791) |
| 01-Jan-2016 | 12-Mar-2016 | 72 | (17,472) | (17,741) | 18,098 | (17,115) | (12,902) | (2,164) | (32,181) | - | (32,181) | (6,017) | (38,198) | (6,116) | (44,315) | (965) | (45,280) |
| **Adjustment to  Alford's Damages** | | | **(126,937)** | **(128,890)** | **130,309** | **(125,518)** | **(93,734)** | **(14,914)** | **(234,166)** | **-** | **(234,166)** | **(36,454)** | **(270,620)** | **(44,378)** | **(314,999)** | **(7,024)** | **(322,023)** |
| **Alford's  Damages - Adjusted 1** | | | **499,698** | **517,510** | **(596,233)** | **420,975** | **254,738** | **44,086** | **719,799** | **(1,835)** | **717,964** | **133,072** | **851,036** | **163,881** | **1,014,916** | **21,540** | **1,036,456** |
| Less balance of 401(k) match | | | | | | | | | | | | - | - | - | - | (21,540) | (21,540) |
| Less meals and lodging | | | | | | | | | | | | - | - | (163,881) | (163,881) | - | (163,881) |
| Less foreign income exclusion | | | | | | | | | | | | (133,072) | (133,072) | - | (266,143) | - | (266,143) |
| **Alford's  Damages - After Adjustments** | | | | | | | | | | | | **-** | **717,964** | **-** | **584,892** | **-** | **584,892** |

EXHIBIT 7 – SUMMARY ALFORD'S DAMAGES CALCULATIONS (CONTINUED)

| Alford's Damages Disaggregated by Quarter | | | Base Pay | Overtime | Taylor's Post demob Earnings | Net | Site Adders "Uplift" | Other Payments | Alford's Gross Comp | Discount | Alford's Gross Comp after Discount | Tax Benefits from Foreign Inc Excl | Alford's Lost Gross Compensation | Alford's Meals & Lodging | Alford's Damages no match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin Date | End Date | Days | | | | | | | | | | | | | |
| 01-Oct-2014 | 31-Dec-2014 | 92 | 21,398 | 21,727 | (25,900) | 17,225 | 15,802 | 3,750 | 36,777 | - | 36,777 | - | 36,777 | 7,435 | 44,212 |
| 01-Oct-2014 | 31-Dec-2014 | 92 | 21,398 | 21,727 | (25,900) | 17,225 | 15,802 | 3,750 | 36,777 | - | 36,777 | - | 36,777 | 7,435 | 44,212 |
| 01-Jan-2015 | 31-Mar-2015 | 90 | 21,715 | 22,049 | (25,300) | 18,464 | 16,035 | 2,219 | 36,718 | - | 36,718 | 7,505 | 44,223 | 7,601 | 51,825 |
| 01-Apr-2015 | 30-Jun-2015 | 91 | 21,956 | 22,294 | (25,600) | 18,651 | 16,213 | 2,244 | 37,107 | - | 37,107 | 7,588 | 44,696 | 7,686 | 52,382 |
| 01-Jul-2015 | 30-Sep-2015 | 92 | 22,198 | 22,539 | (25,900) | 18,837 | 16,391 | 2,268 | 37,497 | - | 37,497 | 7,672 | 45,168 | 7,770 | 52,938 |
| 01-Oct-2015 | 31-Dec-2015 | 92 | 22,198 | 22,539 | (25,900) | 18,837 | 16,391 | 2,268 | 37,497 | - | 37,497 | 7,672 | 45,168 | 7,770 | 52,938 |
| 01-Jan-2015 | 31-Dec-2015 | 365 | 88,067 | 89,422 | (102,700) | 74,789 | 65,030 | 9,000 | 148,819 | - | 148,819 | 30,437 | 179,256 | 30,827 | 210,083 |
| 01-Jan-2016 | 31-Mar-2016 | 91 | 22,083 | 22,422 | (23,500) | 21,005 | 16,307 | 2,735 | 40,047 | - | 40,047 | 7,605 | 47,652 | 7,731 | 55,383 |
| 01-Apr-2016 | 30-Jun-2016 | 91 | 22,083 | 22,422 | (23,500) | 21,005 | 16,307 | 2,735 | 40,047 | - | 40,047 | 7,605 | 47,652 | 7,731 | 55,383 |
| 01-Jul-2016 | 30-Sep-2016 | 92 | 22,325 | 22,669 | (23,800) | 21,194 | 16,486 | 2,765 | 40,445 | - | 40,445 | 7,689 | 48,134 | 7,815 | 55,950 |
| 01-Oct-2016 | 31-Dec-2016 | 92 | 22,325 | 22,669 | (23,800) | 21,194 | 16,486 | 2,765 | 40,445 | - | 40,445 | 7,689 | 48,134 | 7,815 | 55,950 |
| 01-Jan-2016 | 31-Dec-2016 | 366 | 88,816 | 90,182 | (94,600) | 84,398 | 65,587 | 11,000 | 160,985 | - | 160,985 | 30,588 | 191,573 | 31,092 | 222,665 |
| 01-Jan-2017 | 31-Mar-2017 | 90 | 22,505 | 23,328 | (24,200) | 21,632 | 12,203 | 3,205 | 37,041 | - | 37,041 | 7,602 | 44,642 | 7,878 | 52,521 |
| 01-Apr-2017 | 30-Jun-2017 | 91 | 22,755 | 23,587 | (24,500) | 21,842 | 12,338 | 3,241 | 37,421 | - | 37,421 | 7,686 | 45,107 | 7,966 | 53,073 |
| 01-Jul-2017 | 30-Sep-2017 | 92 | 23,005 | 23,846 | (24,700) | 22,151 | 12,474 | 3,277 | 37,902 | - | 37,902 | 7,771 | 45,672 | 8,053 | 53,726 |
| 01-Oct-2017 | 31-Dec-2017 | 92 | 23,005 | 23,846 | (24,700) | 22,151 | 12,474 | 3,277 | 37,902 | - | 37,902 | 7,771 | 45,672 | 8,053 | 53,726 |
| 01-Jan-2017 | 31-Dec-2017 | 365 | 91,270 | 94,606 | (98,100) | 87,776 | 49,489 | 13,000 | 150,265 | - | 150,265 | 30,829 | 181,094 | 31,951 | 213,045 |
| 01-Jan-2018 | 31-Mar-2018 | 90 | 23,100 | 23,944 | (26,200) | 20,844 | 11,971 | 2,404 | 35,219 | - | 35,219 | 7,516 | 42,735 | 7,968 | 50,703 |
| 01-Apr-2018 | 30-Jun-2018 | 91 | 23,357 | 24,210 | (26,700) | 21,067 | 12,104 | 2,431 | 35,601 | - | 35,601 | 7,599 | 43,201 | 8,057 | 51,257 |
| 01-Jul-2018 | 30-Sep-2018 | 92 | 23,613 | 24,476 | (26,700) | 21,389 | 12,237 | 2,458 | 36,084 | - | 36,084 | 7,683 | 43,766 | 8,145 | 51,912 |
| 01-Oct-2018 | 31-Dec-2018 | 92 | 23,613 | 24,476 | (26,700) | 21,389 | 12,237 | 2,458 | 36,084 | - | 36,084 | 7,683 | 43,766 | 8,145 | 51,912 |
| 01-Jan-2018 | 31-Dec-2018 | 365 | 93,683 | 97,106 | (106,100) | 84,689 | 48,549 | 9,750 | 142,988 | - | 142,988 | 30,480 | 173,468 | 32,315 | 205,783 |
| 01-Jan-2019 | 31-Mar-2019 | 90 | 23,515 | 24,375 | (32,100) | 15,790 | 10,061 | 1,233 | 27,084 | - | 27,084 | 5,734 | 32,818 | 7,258 | 40,076 |
| 01-Apr-2019 | 30-Jun-2019 | 91 | 23,777 | 24,646 | (32,400) | 16,022 | 10,173 | 1,247 | 27,441 | - | 27,441 | 5,798 | 33,239 | 7,338 | 40,578 |
| 01-Jul-2019 | 30-Sep-2019 | 92 | 24,038 | 24,916 | (32,800) | 16,154 | 10,284 | 1,260 | 27,699 | - | 27,699 | 5,862 | 33,561 | 7,419 | 40,980 |
| 01-Oct-2019 | 31-Dec-2019 | 92 | 24,038 | 24,916 | (32,800) | 16,154 | 10,284 | 1,260 | 27,699 | - | 27,699 | 5,862 | 33,561 | 7,419 | 40,980 |
| 01-Jan-2019 | 31-Dec-2019 | 365 | 95,368 | 98,853 | (130,100) | 64,121 | 40,802 | 5,000 | 109,923 | - | 109,923 | 23,256 | 133,179 | 29,434 | 162,613 |

**EXHIBIT 7 – SUMMARY ALFORD'S DAMAGES CALCULATIONS (CONTINUED)**

| Alford's Damages Disaggregated by Quarter | | | Base Pay | Overtime | Taylor's Post demob Earnings | Net | Site Adders "Uplift" | Other Payments | Alford's Gross Comp | Discount | Alford's Gross Comp after Discount | Tax Benefits from Foreign Inc Excl | Alford's Lost Gross Compensation | Alford's Meals & Lodging | Alford's Damages no match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin Date | End Date | Days | | | | | | | | | | | | | |
| 01-Jan-2020 | 31-Mar-2020 | 91 | 24,327 | 25,216 | (32,600) | 16,943 | 10,317 | 1,243 | 28,503 | (173) | 28,330 | 5,951 | 34,282 | 7,462 | 41,744 |
| 01-Apr-2020 | 30-Jun-2020 | 91 | 24,327 | 25,216 | (32,800) | 16,743 | 10,317 | 1,243 | 28,303 | (173) | 28,130 | 5,951 | 34,082 | 7,462 | 41,544 |
| 01-Jul-2020 | 30-Sep-2020 | 92 | 24,594 | 25,493 | (33,400) | 16,687 | 10,430 | 1,257 | 28,374 | (174) | 28,200 | 6,017 | 34,216 | 7,544 | 41,761 |
| 01-Oct-2020 | 31-Dec-2020 | 92 | 24,594 | 25,493 | (33,600) | 16,487 | 10,430 | 1,257 | 28,174 | (174) | 28,000 | 6,017 | 34,016 | 7,544 | 41,561 |
| 01-Jan-2020 | 31-Dec-2020 | 366 | 97,843 | 101,418 | (132,400) | 66,861 | 41,493 | 5,000 | 113,354 | (694) | 112,660 | 23,936 | 136,596 | 30,013 | 166,609 |
| 01-Jan-2021 | 31-Mar-2021 | 90 | 24,956 | 26,396 | (33,100) | 18,253 | 10,800 | 1,243 | 30,296 | (567) | 29,728 | - | 29,728 | 7,554 | 37,282 |
| 01-Apr-2021 | 30-Jun-2021 | 91 | 25,234 | 26,690 | (33,600) | 18,323 | 10,920 | 1,257 | 30,500 | (574) | 29,927 | - | 29,927 | 7,638 | 37,565 |
| 01-Jan-2021 | 30-Jun-2021 | 181 | 74,784 | 78,579 | (100,300) | 53,063 | 32,150 | 3,757 | 88,970 | (1,315) | 87,655 | 6,017 | 93,671 | 22,736 | 116,408 |
| | Alford's Damages | | 626,635 | 646,400 | (756,600) | 516,435 | 348,472 | 59,000 | 923,907 | (1,835) | 922,072 | 169,526 | 1,091,598 | 208,259 | 1,299,857 |
| | | | 1,273,035 | | | | 1,621,507 | 1,680,507 | | | | 1,850,033 | | 2,058,292 | |
| Alford's | Calculation of Total Loss | | | | | | | | | | | | | | 1,299,857 |
| Adjustment for | failure to mitigate: | | | | | | | | | | | | | | |
| 01-Oct-2014 | 31-Dec-2014 | 92 | (21,398) | (21,727) | 25,900 | (17,225) | (15,802) | (3,750) | (36,777) | - | (36,777) | - | (36,777) | (7,435) | (44,212) |
| 01-Jan-2015 | 31-Dec-2015 | 365 | (88,067) | (89,422) | 102,700 | (74,789) | (65,030) | (9,000) | (148,819) | - | (148,819) | (30,437) | (179,256) | (30,827) | (210,083) |
| 01-Jan-2016 | 12-Mar-2016 | 72 | (17,472) | (17,741) | 18,593 | (16,619) | (12,902) | (2,164) | (31,686) | - | (31,686) | 6,017 | (37,703) | (6,116) | (43,819) |
| Adjustment to | Alford's Damages | | (126,937) | (128,890) | 147,193 | (108,633) | (93,734) | (14,914) | (217,282) | - | (217,282) | (36,454) | (253,736) | (44,378) | (298,114) |
| Alford's | Damages - Adjusted 1 | | 499,698 | 517,510 | (609,407) | 407,802 | 254,738 | 44,086 | 706,625 | (1,835) | 704,790 | 133,072 | 837,862 | 163,881 | 1,001,743 |
| | Less meals and lodging | | | | | | | | | | | | | (163,881) | (163,881) |
| | Less foreign income exclusion | | | | | | | | | | | (133,072) | (133,072) | - | (266,143) |
| Alford's Damages - After Adjustments | | | 499,698 | 517,510 | (609,407) | 407,802 | 254,738 | 44,086 | 706,625 | (1,835) | 704,790 | - | 704,790 | - | 571,719 |

EXHIBIT 8 – PROBABILITY TABLES

**Taylor v Fluor et al**
Civil Action No. 6:17-cv-01875-BHH-KFM

| Probability Tables<br>List of paths and outcomes | Dec-14 | Mar-15 | Jun-15 | Sep-15 | Dec-15 | Mar-16 | Jun-16 | Sep-16 | Dec-16 | Mar-17 | Jun-17 | Sep-17 | Dec-17 | Mar-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jury finds no damages | - | | | | | | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Dec 2014 | 36,777 | | | | | | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Mar 2015 | 36,777 | 36,718 | | | | | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Jun 2015 | 36,777 | 36,718 | 37,107 | | | | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Sep 2015 | 36,777 | 36,718 | 37,107 | 37,497 | | | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Dec 2015 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Mar 2016 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Jun 2016 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Sep 2016 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Dec 2016 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | | | | | |
| Jury finds Alford's 'Gross Comp' damages through Mar 2017 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | | | | |
| Jury finds Alford's 'Gross Comp' damages through Jun 2017 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | | | |
| Jury finds Alford's 'Gross Comp' damages through Sep 2017 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | | |
| Jury finds Alford's 'Gross Comp' damages through Dec 2017 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | |
| Jury finds Alford's 'Gross Comp' damages through Mar 2018 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2018 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2018 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2018 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2019 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2019 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2019 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2019 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2020 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2020 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2020 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2020 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2021 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2021 | 36,777 | 36,718 | 37,107 | 37,497 | 37,497 | 40,047 | 40,047 | 40,445 | 40,445 | 37,041 | 37,421 | 37,902 | 37,902 | 35,219 |

EXHIBIT 8 – PROBABILITY TABLES (CONTINUED)

**Taylor v Fluor et al**
**Civil Action No. 6:17-cv-01875-BHH-KFM**

| Probability Tables<br>List of paths and outcomes | Jun-18 | Sep-18 | Dec-18 | Mar-19 | Jun-19 | Sep-19 | Dec-19 | Mar-20 | Jun-20 | Sep-20 | Dec-20 | Mar-21 | Jun-21 | Total by Path<br>or Outcome |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jury finds no damages | | | | | | | | | | | | | | - |
| Jury finds Alford's 'Gross Comp' damages through Dec 2014 | | | | | | | | | | | | | | 36,777 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2015 | | | | | | | | | | | | | | 73,495 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2015 | | | | | | | | | | | | | | 110,603 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2015 | | | | | | | | | | | | | | 148,099 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2015 | | | | | | | | | | | | | | 185,596 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2016 | | | | | | | | | | | | | | 225,643 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2016 | | | | | | | | | | | | | | 265,690 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2016 | | | | | | | | | | | | | | 306,136 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2016 | | | | | | | | | | | | | | 346,581 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2017 | | | | | | | | | | | | | | 383,622 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2017 | | | | | | | | | | | | | | 421,043 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2017 | | | | | | | | | | | | | | 458,944 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2017 | | | | | | | | | | | | | | 496,846 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2018 | | | | | | | | | | | | | | 532,065 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2018 | 35,601 | | | | | | | | | | | | | 567,666 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2018 | 35,601 | 36,084 | | | | | | | | | | | | 603,750 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2018 | 35,601 | 36,084 | 36,084 | | | | | | | | | | | 639,834 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2019 | 35,601 | 36,084 | 36,084 | 27,084 | | | | | | | | | | 666,918 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2019 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | | | | | | | | | 694,359 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2019 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | | | | | | | | 722,058 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2019 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | | | | | | | 749,757 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2020 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | 28,503 | | | | | | 778,260 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2020 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | 28,503 | 28,303 | | | | | 806,563 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2020 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | 28,503 | 28,303 | 28,374 | | | | 834,937 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2020 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | 28,503 | 28,303 | 28,374 | 28,174 | | | 863,111 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2021 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | 28,503 | 28,303 | 28,374 | 28,174 | 30,296 | | 893,407 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2021 | 35,601 | 36,084 | 36,084 | 27,084 | 27,441 | 27,699 | 27,699 | 28,503 | 28,303 | 28,374 | 28,174 | 30,296 | 30,500 | 923,907 |

EXHIBIT 8 – PROBABILITY TABLES (CONTINUED)

**Taylor v Fluor et al**
**Civil Action No. 6:17-cv-01875-BHH-KFM**

| Probability Tables<br>List of paths and outcomes | Total by Path<br>or Outcome | Adjusted for<br>Fail to Mit | Weight | 28 | Weight | 406 | Weight | 28 | Weight | 406 |
|---|---|---|---|---|---|---|---|---|---|---|
| Jury finds no damages | - | - | 1 | 0 | 28 | 0 | 1 | 0 | 28 | 0 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2014 | 36,777 | - | 1 | 1,313 | 27 | 992,979 | 1 | n/a | 27 | n/a |
| Jury finds Alford's 'Gross Comp' damages through Mar 2015 | 73,495 | - | 1 | 2,625 | 26 | 1,910,880 | 1 | n/a | 26 | n/a |
| Jury finds Alford's 'Gross Comp' damages through Jun 2015 | 110,603 | - | 1 | 3,950 | 25 | 2,765,072 | 1 | n/a | 25 | n/a |
| Jury finds Alford's 'Gross Comp' damages through Sep 2015 | 148,099 | - | 1 | 5,289 | 24 | 3,554,386 | 1 | n/a | 24 | n/a |
| Jury finds Alford's 'Gross Comp' damages through Dec 2015 | 185,596 | - | 1 | 6,628 | 23 | 4,268,708 | 1 | n/a | 23 | n/a |
| Jury finds Alford's 'Gross Comp' damages through Mar 2016 | 225,643 | 47,112 | 1 | 8,059 | 22 | 4,964,148 | 1 | 1,683 | 22 | 1,036,470 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2016 | 265,690 | 265,690 | 1 | 9,489 | 21 | 5,579,494 | 1 | 9,489 | 21 | 5,579,494 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2016 | 306,136 | 306,136 | 1 | 10,933 | 20 | 6,122,712 | 1 | 10,933 | 20 | 6,122,712 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2016 | 346,581 | 346,581 | 1 | 12,378 | 19 | 6,585,039 | 1 | 12,378 | 19 | 6,585,039 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2017 | 383,622 | 383,622 | 1 | 13,701 | 18 | 6,905,190 | 1 | 13,701 | 18 | 6,905,190 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2017 | 421,043 | 421,043 | 1 | 15,037 | 17 | 7,157,728 | 1 | 15,037 | 17 | 7,157,728 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2017 | 458,944 | 458,944 | 1 | 16,391 | 16 | 7,343,111 | 1 | 16,391 | 16 | 7,343,111 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2017 | 496,846 | 496,846 | 1 | 17,745 | 15 | 7,452,690 | 1 | 17,745 | 15 | 7,452,690 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2018 | 532,065 | 532,065 | 1 | 19,002 | 14 | 7,448,909 | 1 | 19,002 | 14 | 7,448,909 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2018 | 567,666 | 567,666 | 1 | 20,274 | 13 | 7,379,663 | 1 | 20,274 | 13 | 7,379,663 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2018 | 603,750 | 603,750 | 1 | 21,563 | 12 | 7,245,002 | 1 | 21,563 | 12 | 7,245,002 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2018 | 639,834 | 639,834 | 1 | 22,851 | 11 | 7,038,174 | 1 | 22,851 | 11 | 7,038,174 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2019 | 666,918 | 666,918 | 1 | 23,818 | 10 | 6,669,178 | 1 | 23,818 | 10 | 6,669,178 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2019 | 694,359 | 694,359 | 1 | 24,799 | 9 | 6,249,232 | 1 | 24,799 | 9 | 6,249,232 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2019 | 722,058 | 722,058 | 1 | 25,788 | 8 | 5,776,464 | 1 | 25,788 | 8 | 5,776,464 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2019 | 749,757 | 749,757 | 1 | 26,777 | 7 | 5,248,299 | 1 | 26,777 | 7 | 5,248,299 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2020 | 778,260 | 778,260 | 1 | 27,795 | 6 | 4,669,559 | 1 | 27,795 | 6 | 4,669,559 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2020 | 806,563 | 806,563 | 1 | 28,806 | 5 | 4,032,813 | 1 | 28,806 | 5 | 4,032,813 |
| Jury finds Alford's 'Gross Comp' damages through Sep 2020 | 834,937 | 834,937 | 1 | 29,819 | 4 | 3,339,747 | 1 | 29,819 | 4 | 3,339,747 |
| Jury finds Alford's 'Gross Comp' damages through Dec 2020 | 863,111 | 863,111 | 1 | 30,825 | 3 | 2,589,333 | 1 | 30,825 | 3 | 2,589,333 |
| Jury finds Alford's 'Gross Comp' damages through Mar 2021 | 893,407 | 893,407 | 1 | 31,907 | 2 | 1,786,814 | 1 | 31,907 | 2 | 1,786,814 |
| Jury finds Alford's 'Gross Comp' damages through Jun 2021 | 923,907 | 923,907 | 1 | 32,997 | 1 | 923,907 | 1 | 32,997 | 1 | 923,907 |
| | | | 28 | $490,560 | 406 | $334,973 | 28 | $464,377 | 406 | $292,068 |

## EXHIBIT 9 – JOB SEARCH CHART FOR SUPPLEMENTAL DISCOVERY (TARA D. TAYLOR)

| Name of Employer | Date of Application | Job Title | Location of Job |
|---|---|---|---|
| Shell | 9/4/2014 | Your Ref No:18223044 | not specified |
| Bechtel Careers | 9/5/2014 | Sub-Contract Formation Specialist - 107425 | not specified |
| Bechtel Careers | 9/5/2014 | Contracts Administration Specialist Jubail (031.3703) - 106885 | not specified |
| Target | 9/5/2014 | unknown | not specified |
| L-3 Communications | 9/6/2014 | Distribution Manager - 3 - 061998 | not specified |
| Dollar General | 9/6/2014 | OPERATIONS SHIFT MANAGER MARION INDIANA DC - 73001BR | Marion, Indiana, DC |
| Target | 9/9/2014 | Distribution Group Leader | Rialto, Fontana, Ontario |
| Target | 4/7/2015 | Distribution Group Leader - Midway GA-SUP0005HW | Midway, GA |
| DynCorp International LLC | 3/13/2016 | Advisor, Procurement-1601510 | not specified |
| DynCorp International LLC | 3/21/2016 | Advisor, Logistics and Support-1601080 | not specified |
| DynCorp International LLC | 3/24/2016 | Human Resources Manager-INL-1601109 | not specified |
| Worldwide Recruiting and Staffing Services LLC | 3/28/2016 | Advisor, Procurement-1600620 | not specified |
| DynCorp International LLC | 4/14/2016 | Advisor, Afghanistan National Defense Security Force Human Resource-1601377 | not specified |
| DynCorp International LLC | 4/14/2016 | DCOS-SA CSTC-A SENIOR PROCUREMENT ADVISOR | Abu Dhabi |
| Endevis | 6/5/2016 | Registration with Endevis | not specified |
| Panda Restaurant Group, Inc. | 6/7/2016 | Field Human Resources Manager - Atlanta, job ID# 14000417 | Atlanta, GA |
| Synergy Business Consulting | 6/7/2016 | HR Manager | Duluth, GA |
| Bexiam | 6/7/2016 | Human Resources Manager | Atlanta, GA |
| HD Supply | 6/7/2016 | Manager, Regional Human Resources - Facilities Maintenance | Norcross, GA |
| PetSmart | 6/7/2016 | Resume Received | not specified |
| HD Supply | 6/7/2016 | Manager, Regional Human Resources - Facilities Maintenance - Norcross, GA | Norcross, GA |
| Gate Gourmet Recruitment Team | 6/10/2016 | HR Generalist | Atlanta, GA |
| Home Depot | 6/10/2016 | Resume Received | not specified |
| Worldwide Recruiting and Staffing Services LLC | 6/13/2016 | Advisor, Procurement-1601510 | not specified |
| Roth Staffing | 6/13/2016 | Sr. Human Resources Manager | Marietta, GA |
| Worldwide Recruiting and Staffing Services LLC | 6/14/2016 | HR Supervisor-1601873 | not specified |
| Georgia World Congress Center | 6/16/2016 | Employee Human Resource Manager (eHRM) 2651523 | not specified |
| DynCorp International LLC | 6/21/2016 | HR Supervisor-1602604 | not specified |
| DynCorp International LLC | 6/24/2016 | Advisor, Afghanistan National Defense Security Force Human Resource-1601379 | not specified |
| DynCorp International LLC | 6/24/2016 | HR Supervisor-1602336 | not specified |

| Name of Employer | Date of Application | Job Title | Location of Job |
|---|---|---|---|
| Worldwide Recruiting and Staffing Services LLC | 6/24/2016 | Profile submitted | not specified |
| DynCorp-Int'l | 6/24/2016 | Advisor, Afghanistan National Defense Security Force Human Resource | not specified |
| DynCorp International LLC | 6/27/2016 | Afghanistan National Defense Security Force Human Resource Advisor | not specified |
| Worldwide Recruiting and Staffing Services LLC | 6/28/2016 | HR Supervisor-1602336 | not specified |
| DynCorp International LLC | 6/28/2016 | Mentor Program Support Supervisor-1602331 | not specified |
| IHG | 7/1/2016 | Human Resources Manager - Corporate & Global Functions-R121498 | not specified |
| Harris Computer Systems | 7/1/2016 | Human Resource Advisor | Atlanta, GA |
| Oldcastle, Inc. | 7/1/2016 | Deputy Labor Relations Director | Atlanta, GA |
| Confidential | 7/5/2016 | HR Manufacturing Manager | Atlanta, GA |
| Tosca | 7/5/2016 | Human Resources Manager | Atlanta, GA |
| Human Resource Dimensions | 7/6/2016 | Sr. HR Generalist | Norcross, GA |
| Univar | 7/20/2016 | Regional Human Resources Generalist | Atlanta, GA |
| Georgia World Congress Center | 8/1/2016 | Human Resources Manager | Atlanta, GA |
| Home Depot | 8/1/2016 | Resume Received | not specified |
| ANTOnline.com | 8/11/2016 | Dispute Resolution Manager | Atlanta, GA |
| Home Depot | 8/11/2016 | Resume Received | not specified |
| Varite, Inc. | 8/11/2016 | HR Business Partner | not specified |
| Chairlift | 9/6/2016 | Human Resources Content Writer | Atlanta, GA |
| DynCorp International LLC | 11/3/2016 | Reports Coordinator, ANDSF-1603865 | not specified |
| Worldwide Recruiting and Staffing Services LLC | 11/4/2016 | Human Resources Manager Senior-1603299 | not specified |
| DynCorp International LLC | 11/9/2016 | Advisor, Logistics and Support-1603905 | not specified |
| Triumph Group | 11/9/2016 | Senior Human Resources Manager | Atlanta, GA |
| JLL Careers | 11/9/2016 | Senior Human Resources Business Partner 46754BR | not specified |
| ZCorum | 11/15/2016 | Human Resources Manager | Atlanta, GA |
| Goodwill of North Georgia | 11/16/2016 | 6899 - HR Business Partner | North Georgia |
| Floor and Décor | 11/17/2016 | Application Received | Smyrna, GA |
| Marcum Search LLP | 11/22/2016 | Human Resources Generalist | Atlanta, GA |
| Variety Whotesalers, Inc. | 11/24/2016 | Distrbution Center Human Resource Manager | Newnan, GA |
| Hire Investment | 12/7/2016 | Human Resource Generalist II | Atlanta, GA |
| Lockheed Martin | 12/7/2016 | E4373:Labor Relations Rep Sr 373666BR | not specified |
| Lockheed Martin | 12/7/2016 | E4503:Mult Func HR Rep Sr 372811BR | not specified |
| Lockheed Martin | 12/7/2016 | Mult Func HR Rep Sr 371749BR | not specified |
| Lockheed Martin | 12/7/2016 | E4375:Labor Relations Rep Sr Stf 374573BR | not specified |
| Bowlmor AMF | 12/15/2016 | Human Resources Manager | Atlanta, GA |
| Home Depot | 12/22/2016 | Resume Received | not specified |

| Name of Employer | Date of Application | Job Title | Location of Job |
|---|---|---|---|
| Search Solution Group | 12/29/2016 | HR Manager | not specified |
| TeamOne Logistics | 3/4/2017 | Human Resources & Safety Manager | East Point, GA |
| CGL Recruiting | 3/15/2017 | HRBP - Site Manager | Savannah, GA |
| DynCorp International LLC | 5/18/2017 | Operations Manager-1702154 | not specified |
| DynCorp International FZ-LLC | 6/14/2017 | Property Manager-1702028 | not specified |
| Fluor Corp. | 6/15/2017 | Manager, Human Resources 96643BR | not specified |
| Fluor Corp. | 6/30/2017 | ACAP - GG09 - Food Services Supervisor, Senior 96071BR | not specified |
| Fluor Corp. | 6/30/2017 | Manager, Human Resources 96989BR | not specified |
| Home Depot | 7/5/2017 | Resume Received | not specified |
| Merritt Hawkins | 7/25/2017 | Physician Recruiter | Roswell, GA |
| Acadia Healthcare | 7/25/2017 | Human Resource Director | Riverdale, GA |
| Robert Half Management Resources | 7/25/2017 | Compensation Benefits Specialist | Atlanta, GA |
| Fire, Inc. Atlanta | 7/25/2017 | Corporate Trainer | Atlanta, GA |
| Consolidated Container Company | 7/25/2017 | Director Total Rewards | Atlanta, GA |
| Express Employment Professionals - Atlanta | 7/25/2017 | Human Resource Manager | Suwanee, GA |
| Confidential | 7/25/2017 | Payroll & Human Resources Administrator | Marietta, GA |
| Impact Employment Solutions | 7/25/2017 | Staffing Manager | Marietta, GA |
| Critical Mass Global | 7/25/2017 | Resume Received | Atlanta, GA |
| Home Depot | 8/2/2017 | Resume Received | not specified |
| Home Depot | 8/16/2017 | Resume Received | not specified |
| Home Depot | 8/16/2017 | Resume Received | not specified |
| Home Depot | 8/16/2017 | Resume Received | not specified |
| Home Depot | 8/17/2017 | Resume Received | not specified |
| Home Depot | 8/18/2017 | Resume Received | not specified |
| DynCorp International FZ-LLC | 8/24/2017 | HR Manager-1703490 | not specified |
| Worldwide Recruiting and Staffing Services LLC | 8/24/2017 | HR Manager-1703490 | not specified |
| DynCorp International FZ-LLC | 8/24/2017 | HR Manager-1703526 | not specified |
| Worldwide Recruiting and Staffing Services LLC | 8/25/2017 | HR Manager-1703526 | not specified |
| Home Depot | 8/25/2017 | Resume Received | not specified |
| DynCorp International LLC | 11/16/2017 | HR Generalist-1704898 | not specified |
| DynCorp International LLC | 11/16/2017 | HR Manager-1704962 | not specified |
| DynCorp International LLC | 12/4/2017 | HR GENERALIST AFG | Afghanistan |
| DynCorp International LLC | 12/5/2017 | KWAJALEAN HR GENERALIST | not specified |
| DynCorp International LLC | 12/5/2017 | HR MANAGER | KANDAHAR, AFGHANISTAN |

| Name of Employer | Date of Application | Job Title | Location of Job |
|---|---|---|---|
| DynCorp International LLC | 12/11/2017 | HR Generalist Sr-1705289 | not specified |
| DynCorp International LLC | 12/14/2017 | Operations Manager-1704475 | not specified |
| Amazon | 12/14/2017 | HR Services Manager -  Job: 566585 | not specified |
| Amazon | 12/14/2017 | Operations Manager | Jefferson, GA |
| Amazon | 12/14/2017 | Operations Manager | Braselton, GA |
| Amazon | 12/14/2017 | Senior Human Resource Business Partner -  Job: 601448 | not specified |
| Amazon | 12/14/2017 | Principal, Human Resources -  Job: 601446 | not specified |
| Amazon | 12/14/2017 | Senior HR Business Partner -  Job: 569328 | not specified |
| Amazon | 12/14/2017 | Senior HR Business Partner – Amazon Devices EU -  Job: 572238 | not specified |
| Amazon | 12/14/2017 | Workforce Staffing Manager - High Volume Hiring -  Job: 601654 | not specified |
| Amazon | 12/14/2017 | Employee Relations Manager - Job: 601384 | not specified |
| Amazon | 12/14/2017 | Operations Manager - Brazil -  Job: 602235 | Brazil |
| Amazon | 12/14/2017 | Operations Manager - Tampa, FL area -  Job: 600626 | Tampa, FL |
| Amazon | 12/14/2017 | Operations Manager - Houston Area -  Job: 600150 | Houston, TX |
| Amazon | 12/14/2017 | Operations Manager - Jacksonville, FL area -  Job: 600651 | Jacksonville, FL |
| Amazon | 12/14/2017 | Operations Manager - Nashville, TN -  Job: 599792 | Nashville, TN |
| Amazon | 12/14/2017 | Operations Manager - Military Veterans & Spouses (Southeast Region) - Job: 599105 | Southeast United States |
| Amazon | 12/14/2017 | HR Business Partner - Job: 601322 | not specified |
| DynCorp International LLC | 12/16/2017 | HR Generalist Sr-1704779 | not specified |
| Home Depot | 2/12/2018 | Resume Received | not specified |
| BioSource International | 3/7/2018 | Senior HR Manager | Atlanta, GA |
| Home Depot | 8/8/2018 | Resume Received | not specified |
| Home Depot | 8/8/2018 | Resume Received | not specified |
| Home Depot | 8/8/2018 | Resume Received | not specified |
| HHS OHR ENTERPRISE | 11/8/2016 - 2/8/2017 | Contract Specialist | Washington, DC |
| HHS CDC CENTER HUMAN RESOURC | 3/27/2017 - 4/3/2017 | Supervisory Human Resources Specialist | Atlanta, GA |

## APPENDIX A -1 – EXPERT QUALIFICATIONS OF JAMES FORREST JOYNER III

James Joyner was born in Louisburg, NC, was raised in Southern Pines, NC, and currently is a resident of Spartanburg, SC. He currently serves as managing member of business valuation and litigation support services of Integra Valuation Consulting LLC, based in Spartanburg, SC. He is also the managing member of Integra Benefits Consulting LLC and the Joyner Burnette CPA Firm. Joyner previously served as a Member in the Western Carolinas Practice Unit of Dixon Hughes PLLC, a regional Certified Public Accounting and professional services firm.

In addition to coordination of tax compliance and consulting services, Joyner's areas of focus include business valuation, litigation support and employee benefit plans. He has performed business valuations and litigation support services for purposes of equitable distributions, estate matters, gifting matters, employee stock ownership plans, equity, debt instruments, intellectual property, shareholder disputes, damages to business operations, damages to intellectual property, and others.

Mr. Joyner received his B.S. in Accounting from Bob Jones University and received his Certified Public Accountant (CPA) license in 1981, and Certified Valuation Analyst (CVA) designation in 1995. He is Accredited in Business Valuations (ABV – 2007) by the AICPA and has earned designations as a Certified Pension Consultant (CPC – 2004), an Accredited Investment Fiduciary Auditor® (AIFA ®– 2004), Certified in Risk Management (CRM – 2013) and a Certified Patent Valuation Analyst (CPVA – 2014).

His professional affiliations include memberships in the American Institute of Certified Public Accountants, the South Carolina Association of Certified Public Accountants, the American Society of Pension Actuaries, The Appraisal Foundation, the National Association of Certified Valuation Analysts, The Institute of Business Appraisers, and he is an Associate Member of the American Society of Appraisers. In the past, he has served as Board member of a variety of not-for-profit boards and was a co-founding director of the Spartanburg Children's Advocacy Center and the Healthy Smiles of Spartanburg. He also served as a director of the Mary Black Foundation from its inception, until the hospital was sold in 1996 and on the MBF Investment Committee from 1996 through June 2013.

**PROFESSIONAL QUALIFICATIONS AND EXPERIENCE**
**JAMES FORREST JOYNER III**

| | | |
|---|---|---|
| ***Professional Firms:*** | **Integra Valuation Services LLC**<br>P.O. Box 1808<br>Spartanburg, SC 29304 | *Managing Member*<br>*Business Valuation/*<br>*Litigation Support Services* |
| | **Joyner Burnette CPA Firm LLC**<br>P.O. Box 1809<br>Spartanburg, SC  29304 | *Managing Member*<br>*Tax and Attestation Services* |
| | **Integra Benefits Consulting LLC**<br>P.O. Box 1808<br>Spartanburg, SC 29304 | *Managing Member*<br>*Third Party Administration*<br>*Services*<br>*(ESOP, 401k, pension plans)* |

***Education:***

BS in Accounting
Bob Jones University (Greenville, SC)

***Certifications:***

**Certified Public Accountant**
South Carolina #1719, August 21, 1981
North Carolina #21906, March 18, 1994
Georgia #020352, July 27, 1999

**Certified Valuation Analyst**
NACVA, November 3, 1995

**Certified Pension Consultant**
American Society of Pension Professionals and Actuaries
February, 2004

**Accredited in Business Valuation**
AICPA, Certificate #3226, May, 2007

**Certified in Risk Management**
International Institute of Professional Education and Research
June, 2013

**ESOP Administration Certification**
American Society of Pension Professionals and Actuaries
January, 2014

**Certified Patent Valuation Analyst**
The Business Development Academy
December, 2014

***Professional***
***Associations:***

American Institute of Certified Public Accountants
SC Association of Certified Public Accountants
National Association of Certified Valuation Analysts
American Society of Pension Professional & Actuaries
American Society of Appraisers

***Experience:***

*Valuations and peer reviews of reports, fairness opinions (including ESOP companies) for 25 years. Public practice of accounting, auditing and tax services to closely held businesses for over 35 years. Third party administration services to qualified/non-qualified plans, including ESOPs, for over 25 years. Independent trustee services for over 80 ESOPs.*

***Fee for Services:***

*$395 hourly, plus reimbursement of out-of-pocket costs*
*$195 staff hourly; clerical $80-90 hourly*

| Data Available to Parties by Production for Litigation | BATES |
|---|---|
| Selected Fluor payroll registers for Tara Taylor | DEF2734 |
| Fluor Corporation Employees' Savings Investment Plan – Summary Plan Description | DEF3449-68 |
| Travel History per PATS (for Tara Taylor) | DEF4013-14 |
| Form W-2s for Tara Taylor, 2012-2017 | DEF362-68 |
| Individual tax returns for Tara Taylor for 2013 through 2017 | DEF369-508, 540-555 |
| M&A Personal vs Total Personnel, Feb 2012 – Jul 2018 | DEF4052 |
| Plaintiff's Expert Report by Charles L. Alford, PhD, dated 04 June 2018, updated 14 Nov 2019 | Unknown |
| Deposition transcript of Tara Taylor deposition, dated 26 April 2018 | Unknown |
| Deposition transcript of Preston Taylor Howard, Jr., dated 10 May 2018 | Unknown |
| Deposition transcript of Robert Wells and Willard M. Smith, III, dated 27 April 2018 | Unknown |
| Fluor Demobilization Plan, 01 March 2014 | DEF002669-73 |
| Letter of 03 March 2014 from Gregory K. Johnston, Procuring Contract Officer, Logistics Augmentation Program, to Joseph Poniatowski, Functional Director, Prime Contract Management, Fluor International, Inc. | DEF002368-70 |
| Job Search Chart for Supplemental Discovery (Tara D. Taylor) | PL2368-70 |
| Fluor Staffing Realignment Form for SAP #10333755 | DEF 003469 |
| Fluor CORPORATION Employees' Savings and Investment Plan Summary Plan Description, Dated May 1, 2018 | DEF3412-48 |

| Other Resources | BATES |
|---|---|
| Report of the American Academy of Actuaries' – Commissioner's Standard Ordinary (CSO) Task Force (2001) | * |
| South Carolina Code of Laws (https://www.scstatehouse.gov/code/t19c001.php, accessed 11 Nov 2018) | * |
| AN ACT TO AMEND SECTION 19-1-150, CODE OF LAWS OF SOUTH CAROLINA, 1976, RELATING TO THE LIFE EXPECTANCY TABLE FOR CIVIL LITIGATION, SO AS TO UPDATE THE TABLE USING THE 2001 COMMISSIONERS STANDARD ORDINARY MORTALITY TABLE. (https://www.scstatehouse.gov/sess115_2003-2004/bills/4453.htm, accessed 11 Nov 2018) | * |
| Publication 54 – Tax Guide for U.S. Citizens and Resident Aliens Abroad, Internal Revenue Service | * |
| Power Point deck Rock Island Contracting Center, dated 15 June 2011 | * |
| Department of Defense Contractor and Troop Levels in Afghanistan and Iraq: 2007-2018, Updated May 10, 2019, Congressional Research Service, https://crsreports.congress.gov, R44116 | * |
| LITIGATION SERVICES HANDBOOK – The Role of the Financial Expert, 6th Edition, Edited by Roman L. Weil, Daniel G. Lentz, Elizabeth A. Evan | * |
| Modeling Risk: Applying Monte Carlo Risk Simulation, Strategic Real Options, Stochastic Forecasting, Portfolio Optimization, Data Analytics, Business Intelligence, and Decision Modeling (Page 1). ROV Press. Kindle Edition. Mun, Johnathan. 3rd edition | * |
| * BATES numbers were not assigned to these documents at the time my report was produced. | |

| Litigation Support Services | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Client | Case Title | Case / Citation Number | Date Engaged | Attorney | Type of Case | Deposed Date | Expert Witness Testimony Given | Verdict | Court or County, State | Judge | Comments: |
| Piedmont Hospice LLC | Daphne Necciai, individually and as a member of Piedmont Hospice, LLC v. Low Country Medical Management Services, LLC, Alan B. Richey, James W. Kellett, Jr., and Michael Purcell | 2012-CP-42-2146 | 2012 | Lee Plumblee | Damages from Lost Profits | None | No | Settled | | | Review data for possibly expert witness testimony |
| Zurich North America Insurance | Zurich North America Insurance v. Joe Gibson | Claim #9100068205001 | 2012 | Brad Martin | Damages from Lost Profits | None | No | Settled | Federal | | Consulting engagement; proceeds from sale of company not received |
| Michael A. Morris and JEMACJO II, Inc. | Morris and JEMACJO II, Inc., Plaintiffs v. Carolina Firme Services, LLC and Safeware, Inc., Defendant | 2012-CP-42-00165 | 2013 | Koger Bradford, Josh Thompson | | None | No | Settled | | | |
| James T. Bay | Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., Plaintiff v. James T. Bay, Defendant | 8:14-cv-04180-JMC | 2015 | Bradford N. Martin | Bankruptcy Recovery | None | No | Settled | Federal | J. Michelle Childs | Defense of putative gains received in PONZI scheme; report issued |
| DIRTT Environmental Solutions, Inc., d/b/a Spider Agile Technology and DIRTT Networks f/k/a Axios Networks | Debra Funk, Plaintiff vs. DIRTT Environmental Solutions, Inc., d/b/a Spider Agile Technology and DIRTT Networks f/k/a Axios Networks, Defendants | 6:13-cv-01133-TMC | 2015 | Sarah Sloan Batson, Wyche Law Firm | Lost Commission Compensation | None | No | Settled | Federal | | Report issued on business profits and compensation claims |
| Epoplex, Div of Stoncor Group, Inc. | Epoplex, a Division of StonCor Group, Inc. Vs Timothy Weitzel, Art Livingston, and magnolia Advanced Materials, Inc. | 8:14-cv-04525 HMH | 2015 | Bradford N. Martin | Damages from Lost Profits | None | No | Settled | Federal | | |
| George Kanavas | Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., Plaintiff v. George Kanavas, Defendant | 8:14-cv-04279-JMC | 2015 | Bradford N. Martin | Bankruptcy Recovery | None | No | Settled | Federal | J. Michelle Childs | Defense of putative gains received in PONZI scheme; report issued |
| Jim Dodds | Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., Plaintiff v. Jim Dodds, Defendant | 8:15-cv-00561-JMC | 2015 | Bradford N. Martin | Bankruptcy Recovery | None | No | Settled | Federal | J. Michelle Childs | Defense of putative gains received in PONZI scheme; report issued |
| Lynda Sentell Stevenson | Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., Plaintiff v. Lynda Sentell Stevenson, Defendant | 8:15-cv-02371-JMC | 2015 | Bradford N. Martin | Bankruptcy Recovery | None | No | Settled | Federal | J. Michelle Childs | Defense of putative gains received in PONZI scheme; report issued |
| Barbara Anne Gibson and Paul M. Gibson, Plaintiffs | Barbara Anne Gibson and Paul M. Gibson, Plaintiffs vs. J. Randall McPherson, individually, Kars R Us of Spartanburg, LLC, and Accepted Credit, LLC, Defendants | 2013-CP-42-4551 | 2016 | Alan Lazenby and Laura Filler | Damages from Lost Profits | Yes | Yes | Settled | Spartanburg County (SC) Master-in-Equity Gordon Cooper | | Report on damages |
| Milliken & Company | Milliken & Co. v. Robert S. Weiner, et al. | 7:14-cv-04422 | 2016 | Troy Tessier | Damages from Lost Profits | None | No | Settled | Federal | | Report on value of business and intellectual property |
| Premier Investments Group LLC | Premier Investment Group LLC, Etal, Plaintiff vs. Lewis C. Mason, Defendant | 2014-CP-42-051119 | 2016 | Greg English | Damages from Lost Profits | Pending | Pending | Settled | Federal | | Report on Business value and damages analysis |
| Claude Williams | Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., Plaintiff v. Claude Williams, Jr., Realty Associates, and Williams Grandchildren's Partnership, Defendants | 8:15-cv-03633-JMC | 2017 | Bradford N. Martin | Bankruptcy Recovery | None | No | Settled | Federal | J. Michelle Childs | Defense of putative gains received in PONZI scheme; report issued |
| Lucile Sullivan | Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., Plaintiff v. Lucile M. and Hewlett K. Sullivan, Jr., Defendants | 8:15-CV-00563-JMC | 2017 | Bradford N. Martin | Bankruptcy Recovery | None | No | Settled | Federal | | Defense of putative gains received in PONZI scheme; report issued |
| Piggly Wiggly ESOP | DANA SPIRES, GLENN GRANT, SUSAN MOHLE, and TOM MIRANDA on Behalf of Themselves and All Others Similarly Situated v. DAVID R. SCHOOLS,WILLIAM A. EDENFIELD JR., ROBERT G. MASCHE, JOSEPH T. NEWTON III, BURTON R. SCHOOLS, PIGGLY WIGGLY CAROLINA COMPANY, INC. & GREENBAX ENTERPRISES, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST PLAN COMMITTEE, JOANNE NEWTON AYERS, MARION NEWTON SCHOOLS, and JOHN DOES 1-10 | 2:16-cv-00616-RMG | 2017 | Lars Golumbic, Sarah Adams/Groom Law Group | ERISA Fiduciary Issues | None | No | Settled | Federal | Richard M. Gergel | Fiduciary issues for ESOP; valuation issues for stock and debt; damages; report issued; rebuttal report issued |
| Carissa Elena South | Carissa Elena South v. David Christopher Lloyd | CL17-769 | 2018 | C. Shawn Potter | Divorce | None | Yes | Lost | State (VA) | Donald Coggins | Divorce (value of brokerage book of business) |
| Tommy Holt | Holt v. ARES | CA 7:17-cv-03173 | 2018 | Ayla G. Luers Conner, Holcombe Bomar, PA Law Firm | Damages from Lost Profits | None | No | Settled | State SC | | Value of equity and lost earn out |
| Fluor Corporation and Fluor Gov't Group International, Inc. | Tara Taylor, Plaintiff v Fluor Corporation and Fluor Government Group International, Inc., Defendants | CA 6:19-cv-01313-BHH-KFM | 2018 | T. Chase Samples, Jackson Lewis, PC Law Firm | Employment | None | | Ongoing | Federal | Kevin F. McDonald, US Magistrate Judge | Damages from termination of job |
| Precision Bearing and Machine, Inc. | Christopher D. Seay, Plaintiff v. Presision Bearing & Machine, Inc., Defendant | CA 2017-CP-42-03049 | 2019 | Billy Gunn, Holcombe Bomar, PA Law Firm | Forensic Accounting; Damages from Lost Profits | 5/20/2019 | No | Settled | State SC | | Damages from lost profits; value of equity |
| Robert Redmond | Robert Redmond v David Raad | CA 2018-CP-04-00181 | 2019 | Gregory English, WYCHE PA Law Firm | Shareholder dispute - Fair Value | tbd | tbd | Ongoing | State SC | | |