UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| Tara Taylor, | ) | Civil Action No. 6:17-1875-BHH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **OPINION AND ORDER** |
| Fluor Corporation and Fluor Government Group International, Inc., | ) | |
| Defendants. | ) | |

This matter is before the Court on various motions in limine filed by the parties in anticipation of trial, which is currently scheduled to begin February 18, 2020. (*See* ECF No. 90.) The Court will address each motion in turn.

**I. Plaintiff's Motion to Exclude Testimony of James F. Joyner**

Plaintiff Tara Taylor ("Plaintiff") filed a motion in limine to exclude testimony of James F. Joyner or, in the alternative, to strike portions of his report and exclude his written report from view of jury on December 26, 2019. (ECF No. 91.) Defendants Fluor Corporation and Fluor Government Group International, Inc. ("Defendants" or "Fluor") responded on January 9, 2020 (ECF No. 95), and Plaintiff replied on January 13, 2020 (ECF No. 97). The Court assumes familiarity with the background of the case and will not repeat here its prior elucidation of the underlying facts. (*See* ECF No. 73 at 2–18.)

Both parties retained experts to analyze and potentially testify regarding economic losses arising from demobilization of Plaintiff from her position as a Government Contracts Specialist in the Prime Contracts department at Bagram Airfield, Afghanistan

1

in 2014. Plaintiff retained Charles L. Alford, PhD. ("Dr. Alford"). Defendants retained James F. Joyner, III, CPA ("Mr. Joyner"). Defendants bear the burden of showing that the testimony they seek to offer through Mr. Joyner meets the requirements of Rule 702 by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). Moreover, Defendants must show that Mr. Joyner's expert testimony meets the standards for relevance and reliability set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Plaintiff's motion in limine is granted in part and denied in part for the following reasons.

First, Plaintiff argues that Mr. Joyner's testimony should be excluded in its entirety because he lacks the requisite training, experience, and qualifications to determine damages from loss of employment, and therefore cannot be qualified as an expert in the areas for which his opinions are offered in this case. (*See* ECF No. 91-1 at 3–9.) The parties agree that the damages calculations at issue are more complex than in the typical employment case due to the presence of circumstances unique to Plaintiff's job as a government contractor working at an international location in an active war zone. As such, hazard pay, hardship pay, overtime, meals and lodging expenses, and the putative benefit of the foreign earned income tax exclusion are all potentially at issue in determining Plaintiff's alleged economic losses. While it is true that Mr. Joyner has little to no experience calculating economic losses in employment cases specifically, he does appear to be qualified in the field of determining economic damages more generally. (*See* ECF No. 95 at 9–17.) Mr. Joyner's apparent lack of preparation for his deposition, failure to grasp essential facts of the case, and flimsy to non-existent knowledge of relevant sources (*see* ECF No. 91-1 at 13–17) are all matters that go to the weight to be afforded

2

his testimony by the fact finder, rather than to its admissibility. Fluor represents that it retained Mr. Joyner to provide a rebuttal to Plaintiff's expert's "extravagant" damages calculation. (*Id.* at 4.) Subject, of course, to Defendants' ability to lay a proper foundation at trial, Mr. Joyner may provide a rebuttal opinion to Dr. Alford's calculations and explain the reasoning behind why the figures diverge. Thus, to the extent Plaintiff seeks to exclude Mr. Joyner's testimony in its entirety the motion in limine is denied. However, both parties are advised that the appropriate scope of the experts' testimony will be a function of the Court's contemporaneous rulings regarding the categories of claimed damages that are recoverable as a matter of law.

Second, Plaintiff argues that Mr. Joyner improperly attempts to opine on legal issues, such as whether Plaintiff can recover meals and lodging expenses, a tax effect adjustment, and loss of the foreign earned income tax exclusion. (*See* ECF No. 91-1 at 9–12.) The applicability of these damages categories is obviously the subject of significant dispute between the parties and has the potential to dramatically impact the final damages figures calculated by the experts. Plaintiff, through Dr. Alford, has asserted that such damages should be awarded and thereby put their applicability *vel non* at issue. Again, if there is a proper foundation for Mr. Joyner's opinion that these damages categories should not apply, then he will be permitted to testify as much. To this degree, the motion in limine is denied. If, however, Mr. Joyner's opinion is based on nothing more than his own proprietary judgment that these damages would constitute an inappropriate windfall for Plaintiff, the testimony will be excluded. All the normal rules that prevent an expert witness from invading the province of the jury apply and will be enforced in due course.

3

Third, Plaintiff contends that Mr. Joyner's proposed opinion as to a probability analysis of job loss is an untested model manufactured for this case and fails the test for admissibility under *Daubert* and *Kumho Tire Co. v. Charmichael*, 526 U.S. 137 (1999). (*See* ECF No. 91-1 at 12–33.) Fluor responds that Mr. Joyner's probability opinion is "based on simple math" and not an untested model. The Court agrees with Plaintiff and finds: (1) this area of Mr. Joyner's purported expertise is not generally recognized; (2) the "probability analysis" is speculative, is calculated in a manner designed to exaggerate the odds that Plaintiff would have otherwise lost her job, and prejudicially assumes knowledge of military decision making that is far outside Mr. Joyner's ken; and (3) the "model" lacks any reliable foundation that could pass muster under a *Daubert-Khomo Tire* analysis. Accordingly, Plaintiff's motion in limine is granted to the extent it seeks exclusion of Mr. Joyner's probability analysis of job loss. This does not prevent Fluor from introducing direct evidence tending to show that subsequent reductions in the workforce at Bagram Airfield may have impacted the security of Plaintiff's job in the Prime Contracts department, a prerogative that Plaintiff does not contest. (*See* ECF No. 97 at 11 n.13.)

Finally, Plaintiff requests that Mr. Joyner's written report be excluded from view of the jury. (*See* ECF No. 91-1 *passim*.) Fluor responds that the request is premature because Fluor has not offered the report into evidence and does not intend to offer the full report. (ECF No. 95 at 22.) However, Fluor notes that it will seek to use certain tables and exhibits from the report as demonstrative exhibits during Mr. Joyner's testimony and may decide to offer one or more of those tables or exhibits into evidence. (*Id.* at 22–23.) The Court agrees with Defendants and reserves ruling on the potential admissibility of select portions of Mr. Joyner's report. Obviously, the report in its entirety is not admissible.

4

Nonetheless, the evidentiary landscape at trial may develop in such a way that limited portions of the report become admissible. Accordingly, the motion in limine to exclude Mr. Joyner's report in its entirety is denied at this time.

**II. Defendants' Motion to Exclude Evidence of Kelvin Johnson's Complaints**

Fluor filed a motion in limine to exclude evidence of Kelvin Johnson's complaints on January 31, 2020. (ECF No. 106.) Plaintiff responded on February 2, 2020. (ECF No. 109.)

In the motion, Fluor seeks "to exclude evidence of Kelvin Johnson's complaints about Tom Roy and Steve Whitcomb because these complaints are not relevant to Plaintiff Tara Taylor's retaliation claim, and, even if they were, the danger of confusing the jury, wasting time, and unfair prejudice to Fluor outweighs their relevance." (ECF No. 106 at 1.) Johnson's complaint against Roy concerned racially insensitive comments made by Roy to Johnson. (*Id.* at 3–4.) The complaint was investigated by Steve Shenk, Fluor's local employee relations team leader, who concluded that Roy had been disrespectful to Johnson and recommended disciplinary action be taken against Roy. (*Id.*) Roy was given a verbal reprimand by Country Manager, Steve Whitcomb. (*Id.* at 4.) Johnson's complaint against Whitcomb concerned alleged retaliation toward Johnson for having complained about Roy. (*Id.* at 4–7.) Given that the complaint involved a manager of some seniority, Fluor's human resources department sent an investigator from Greenville, South Carolina, Rob Wells, to investigate the allegations on site at Bagram. (*Id.* at 6.) Wells interviewed eight witnesses, including Plaintiff and everyone else who worked in the Prime Contracts office. (*Id.*) During her interview, Plaintiff informed Wells that she felt there was no dignity and respect on "the second floor"—where the managers'

5

offices were located—and informed Wells of her view that her manager, Ron Riley, showed favoritism to certain employees, infrequently communicated with his team, ignored emails, and had begun to isolate Johnson since Johnson made his complaint. (*Id.*) Ultimately, Wells found that Johnson's allegations against Whitcomb were unsubstantiated, but Wells nonetheless counseled Whitcomb to be mindful of yelling and profanity on the second floor, and to treat Johnson the same as before he complained. (*Id.*) Fluor argues that Johnson's race discrimination complaint against Roy has no connection to Plaintiff's claim that Fluor and Ron Riley retaliated against her for engaging in protected activity, and thus lacks any relevance to the matters under consideration in this case. (*See id.* at 8–9.) Fluor contends that even if Johnson's race discrimination complaint has some limited relevance, its probative value is substantially outweighed by the risk of unfair prejudice, given that Fluor is willing to stipulate Plaintiff engaged in protected activity. (*See id.*) Fluor further argues that the details of Johnson's retaliation complaint against Whitcomb are irrelevant to whether Riley retaliated against Plaintiff, and that the introduction of such details would inevitably lead to a distracting mini-trial over whether Johnson was indeed retaliated against by Fluor. (*See id.* at 10–11.) Fluor states it "is willing to stipulate that Plaintiff's participation in the Johnson investigation was protected activity for purposes of her retaliation claim," and that there is no basis for introducing any of the exhibits identified by Plaintiff that are connected to Johnson's retaliation complaint. (*Id.* at 12–13.)

Plaintiff responds, *inter alia*, that it would be inadvisable to grant categorical relief barring all evidence of Johnson's complaints at this stage, particularly because Fluor's motion lacks sufficient specificity regarding what, among the numerous possible sources

6

of evidence pertaining to Johnson's complaints, is "clearly inadmissible on all potential grounds." (*See* ECF No. 109 at 1–8); *United States v. Verges*, No. 1:13CR222 JCC, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014). The undersigned agrees. "[A] court is often wise to await the unfolding of evidence before the jury before undertaking to make definitive rulings on the likely probative value of disputed evidence." *E.I. Dupont De Nemours & Co. v. Kolon Indus.*, 564 F. App'x 710, 715 (4th Cir. 2014). The Court is not prepared to engage in a carte blanche exclusion of all evidence of Johnson's complaints against Roy and Whitcomb because there are undoubtedly matters pertaining to those complaints that are relevant and necessary to: (1) provide explanatory context regarding the genesis of Plaintiff's claims in this lawsuit; and (2) support Plaintiff's overarching theory of a culture of retaliation in the Prime Contracts office. That being said, the Court is keenly aware of the potential distraction and confusion that admission of the *granular detail* of Johnson's complaints could introduce into the instant trial, and can assure both parties that the undersigned will not countenance a trial-within-a-trial about this, or any other, issue. For example, Plaintiff should not assume that the written documents (including emails, text messages, performance reviews, complainant affidavit, etc. (*see* ECF No. 106-3)) associated with Johnson's complaints are admissible merely because the complaints themselves may provide relevant context. It goes without saying that *all* pieces of evidence offered at the trial will need to satisfy applicable evidentiary rules, including the hearsay rule, before their admission will be permitted. Accordingly, Fluor's motion is denied, but Fluor is certainly free to raise objections about the admissibility of testimonial and documentary evidence pertaining to Johnson's complaints as the evidence is offered at trial.

**III. Defendants' Motion to Exclude Evidence Regarding Equitable Remedies**

Fluor filed a motion in limine to exclude all evidence regarding equitable remedies on January 31, 2020. (ECF No. 107.) In the motion, Fluor requests that such evidence, including but not limited to back pay and front pay, should be excluded from the jury trial and presented at a separate bench trial before the undersigned. (*Id.*) On February 4, 2020, the Court conducted a telephone conference with counsel for both parties in order to discuss the matter as it relates to completing the trial within the allotted timeframe. Later that day, the parties filed a consent stipulation indicating that "the damages addressed in the parties' expert reports, including back pay and front pay, shall be submitted for determination by the Court and not to the jury." (ECF No. 113.) Accordingly, Defendants' motion to exclude evidence regarding equitable remedies from the jury trial (ECF No. 107) is granted.

The Court is not clear whether the parties' broadly-worded stipulation moots Plaintiff's motion to exclude the testimony of James F. Joyner (ECF No. 91). However, the ruling outlined above (*supra* at 1–5) stands, unless and until the parties inform the Court that the motion is moot.

**IV. Defendants' Omnibus Motion to Exclude Certain Evidence**

Fluor filed an omnibus motion in limine to exclude certain evidence from trial on January 31, 2020. (ECF No. 108.) Plaintiff responded on February 3, 2020. (ECF No. 111.)

In the motion, Fluor requests that the Court exclude the following matters: A. Any testimony, mention, or reference to other lawsuits and settlements involving Fluor Corporation, Fluor Government Group International, Inc., or any affiliated company of

Defendants; B. Any Testimony or Evidence Relating to Plaintiff's Second Lawsuit Against Fluor Corporation and Fluor Government Group International, Inc.; C. Any testimony, mention, or reference to the *Batt Masonry* lawsuit in which Defendants' expert, Mr. James F. Joyner, III, was a party; D. Any testimony, mention, or reference to the EEOC's For Cause Finding in Plaintiff's Underlying Charge of Discrimination; E. Any documents, records, mention, testimony, or reference to any asset sale, Fluor's plans to sell part of the Government Group, corporate divestitures, or the selling of any part of Defendants' businesses; F. Any testimony, mention, or reference to the "ungrateful bitches" comment attributed to Ron Riley. (ECF No. 108 at 1–2.) After consultation with opposing counsel, Fluor informs the Court that Plaintiff does not intend to introduce evidence pertaining to topics A. through E. and has agreed to give the Court and Defendants prior notice if that decision changes during the trial. (*Id.* at 2; ECF No. 108-1 at 9 n.4.) Accordingly, Fluor's motion is denied as moot with respect to topics A. through E. The Court will revisit those topics if it becomes necessary. The parties dispute the admissibility of topic F.

In the motion, Fluor argues Riley's alleged statement that Plaintiff was an "ungrateful bitch" is inadmissible hearsay and unfairly prejudicial to Fluor. (ECF No. 108-1 at 10.) Fluor represents that Plaintiff testified in her deposition that Paul Gentry—a site manager at Bagram—told her that James Badillo—a member of Fluor's Strength Management Team—told him (Gentry) that Riley referred to Plaintiff and another Prime Contracts employee, Nikki Klimak, as "ungrateful bitches" following their respective hotline complaints in 2014. (*Id.* (citing Taylor Dep. 117:14-25, ECF No. 108-2 at 4).) The Court's review of the cited portion of Plaintiff's deposition reveals no reference to Badillo, but rather Plaintiff's belief that Riley made the comment in the presence of Gentry and

9

Mark Cofer. (*See* Taylor Dep. 118:1-6.) Fluor contends that most of the witnesses who were asked in depositions whether they recalled Riley making the comment testified they did not, that Riley denies making the comment, and that Plaintiff testified she neither personally witnessed the comment nor was informed of the context in which the comment was allegedly made. (ECF No. 108 at 12.) Moreover, Fluor asserts—assuming transmission of the comment from Riley to Badillo to Gentry—that the alleged statement constitutes hearsay within hearsay, for which there are inadequate exceptions to permit the admission of each hearsay layer. (*See id.* at 10–11.) Fluor argues:

> [E]ven if the Court were to conclude that the first part of the statement, Riley's alleged statement to Badillo, is admissible under Rule 801(d)(2)(D), there is no exception to cover the second part of this statement—Badillo relaying the statement to Gentry (or, for that matter, the third level, Gentry relaying the statement to Plaintiff).

(*Id.* at 11.)

First, a statement that is offered against an opposing party, which was made by the party's agent or employee on a matter within the scope of that relationship and while it existed is *not hearsay*. Fed. R. Evid. 801(d)(2)(D). The Court finds that the alleged "ungrateful bitches" comment is precisely such a statement in that it is offered against Fluor and was made by Riley on a matter within the scope of his employment relationship–namely, his alleged mindset toward employees who he managed and who made hotline complaints against him.

Second, the follow-on question regarding admissibility of the "ungrateful bitches" comment involves more of a conditional relevance analysis under Federal Rule of Evidence 104 than a hearsay analysis under Rules 801 through 807. Obviously, Plaintiff is not offering the out of court statement in question for the truth of the matter asserted—

10

i.e., to prove that Taylor and Klimak are indeed "ungrateful bitches." It requires little insight to discern that Plaintiff would offer the evidence in order to demonstrate Riley's state of mind, bias, intent, etc. Plaintiff indicates further permissible non-hearsay purposes in her response: "(1) proof of notice to Fluor[;] (2) the effect that hearing the statement from management had on Taylor; (3) the insincerity of the investigation as Smith did not timely pursue this corroborated and shocking statement; and (4) to explain Taylor's reasons for reporting it as part of her complaints." (ECF No. 111 at 5. ) The parties' real dispute is over whether Riley actually made the comment in the first instance. Rule 104 states in relevant part: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). Dexter Hooks, who Riley selected to replace Johnson as Prime Contracts Manager after Johnson resigned, testified that he recalled Riley calling Plaintiff and Klimak "ungrateful bitches" more than once. (*See* Hooks Dep. 62–65, ECF No. 56-5.) So long as Plaintiff is able to lay the proper foundation for Hooks' and/or other individuals' personal knowledge of the comment(s) having been made by Riley, the conditional relevance question will be resolved in Plaintiff's favor and the testimony will be admissible. Fluor's assertion of Rule 403 as a basis of exclusion needs little discussion here. The Court finds that the probative value of the evidence in question *is not* substantially outweighed by the risk of unfair prejudice. Accordingly, Fluor's motion to exclude the evidence itemized in topic F. is denied.

## **CONCLUSION**

After careful consideration of the relevant materials and law, and for the reasons set forth above: (1) Plaintiff's motion in limine to exclude testimony of James F. Joyner

11

or, in the alternative, to strike portions of his report and exclude his written report from view of jury (ECF No. 91) is GRANTED in part and DENIED in part; (2) Defendants' motion in limine to exclude evidence of Kelvin Johnson's complaints (ECF No. 106) is DENIED; (3) Defendants' motion in limine to exclude all evidence regarding equitable remedies (ECF No. 107) is GRANTED; and (4) Defendants' omnibus motion in limine to exclude certain evidence is DENIED as moot with respect to topics A. through E., and DENIED on the merits as to topic F.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 10, 2020
Greenville, South Carolina